CINCINNATI EQUIPMENT CO. v. DEGNAN.

(Circuit Court of Appeals, Sixth Circuit.   December 31, 1910.)

No. 2,043.

1. PLEADING (§ 9*)—SUFFICIENCY OF BILL AGAINST CORPORATION—ALLEGA-
   TION OF INSOLVENCY.

   A bill against a corporation sufficiently alleges insolvency, when it al-
   leges facts from which such condition may be naturally and reasonably
   deduced.

   [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 29; Dec. Dig.
   § 9.*]

2. CORPORATIONS (§ 557*)—SUFFICIENCY OF BILL AGAINST CORPORATION—AL-
   LEGATION OF INSOLVENCY.

   Averments, in a creditor's bill against a manufacturing corporation,
   asking the appointment of a receiver, which alleges the issuance of an
   execution by complainant against defendant and its return nulla bona;
   the issuance of a second execution to another county, which for want of
   goods and chattels whereon to levy was levied on real estate subject to
   large mortgages thereon securing bonds; that defendant was unable to
   continue its business and was indebted to laborers whose claims had ac-
   cumulated during nearly four months and until they amounted to more
   than $18,000; that, unless its property was conserved by the appointment
   of a receiver to continue its business and collect its accounts receivable
   until its property could be disposed of to advantage, such property would
   be insufficient to pay its debts—sufficiently allege insolvency.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2228; Dec.
   Dig. § 557.*]

3. CORPORATIONS (§ 553*)—WHAT CONSTITUTES INSOLVENCY.

   The inability of a corporation to pay its current obligations as they
   mature in the ordinary course of its business constitutes insolvency in a
   general sense, which will authorize the appointment of a receiver by a
   court of equity in a creditor's suit.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216;
   Dec. Dig. § 553.*]

4. RECEIVERS (§ 56*)—JURISDICTION TO APPOINT—SUIT AGAINST CORPORATION.

   Where, in a creditor's suit against a corporation asking the appoint-
   ment of a receiver, the defendant appeared and admitted the averments
   of the bill, which sufficiently alleged insolvency, and no collusion is
   charged, an intervener coming into the case after the appointment of a
   receiver cannot challenge the jurisdiction of the court to make such ap-
   pointment.

   [Ed. Note.—For other cases, see Receivers, Cent. Dig. § 95; Dec. Dig.
   § 56.*]

5. COURTS (§ 37*)—OBJECTIONS TO JURISDICTION—TIME FOR MAKING.

   Objection to jurisdiction in equity must be taken before the case has
   been entered upon on the merits, and an intervener who in his petition
   did not question the jurisdiction cannot do so after an answer has been
   filed to his petition and property has been surrendered to him under a
   stipulation.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 147–151; Dec.
   Dig. § 37.*]

6. SALES (§ 474*)—CONDITIONAL SALES—FAILURE TO FILE CONTRACT—OHIO
   STATUTE—VALIDITY AS AGAINST RECEIVER.

   Under Rev. St. Ohio, § 4155—2, which provides that conditional sale
   contracts shall be void as to all creditors unless the conditions shall be

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

evidenced by writing signed by the purchaser, and also having a statement thereon under oath made by the seller of the amount of the claim, or by a true copy thereof, with an affidavit that the same is a copy, deposited with the county recorder, etc., a conditional sale of property to a corporation, where such requirements have not been complied with, is void as against a receiver for the corporation appointed by a federal court in a suit to administer the assets of the corporation for the benefit of all creditors, and, under the rule of decision in Ohio as to the rights of receivers in such suits, the right of the receiver to contest the validity of the sale does not depend on the degree of insolvency of the corporation as shown by the bill, but is the same whether it is alleged that the corporation has not sufficient assets to pay its debts, or is unable to meet its obligations as they mature in the ordinary course of its business.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1391–1402; Dec. Dig. § 474.*]

**7. SALES (§ 474*)—CONDITIONAL SALES—VALIDITY UNDER OHIO STATUTE.**

The effect of the failure to comply with Rev. St. Ohio. § 4155—2, declaring conditional sale contracts void as to creditors unless evidenced by a writing filed with the county recorder, etc., is not avoided by placing a plate on the article sold, stating that it is the property of the vendor.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1391–1402; Dec. Dig. § 474.*

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 418.]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Suit in equity by the Merchants' & Manufacturers' National Bank of Sharon, Pa., against the Logan Brick Manufacturing Company and the Security Savings Bank & Trust Company. On the hearing of a petition of intervention by the Cincinnati Equipment Company, a decree was entered against such company in favor of Joseph P. Degnan, receiver, and intervener appeals. Affirmed.

This is an appeal from a decree in favor of defendant below (appellee), against intervener (appellant), for $6,000 and interest from its date. Appellant was allowed to intervene in a suit theretofore brought on the equity side in the court below by the Merchants' & Manufacturers' National Bank of Sharon, Pa., against the Logan Brick Manufacturing Company and the Security Savings Bank & Trust Company, wherein the appellee had been appointed a receiver prior to such intervention. The appellant sought by its intervening petition to obtain an order directing the receiver, Degnan, to deliver to it a certain steam shovel and dipper which it had prior to the receivership delivered to the brick company under a contract in writing, whereby the intervener leased and demised the shovel and dipper to the brick company for a term of eight months, subject, however, to a covenant that the brick company should pay to intervener $1,000 in cash and at the same time deliver to intervener its promissory notes for different sums and terms, aggregating $10,500. The contract further provided that, on payment of these notes as they fell due, the intervener would on demand sell the shovel and dipper to the brick company for the sum of $5 in cash; but that, upon failure so to pay the notes or upon any breach of the contract, the intervener might take possession of the equipment; and further that in the event the purchase should not be completed the brick company should return the equipment. It was alleged, in substance, also, that the equipment was delivered to the brick company in Hocking county, Ohio, where it had since been in use; that intervener duly filed a copy of the contract of lease with the recorder of that county; and that the same was by him recorded in the

Hocking county record of leases; but that the brick company had not paid the notes, and a balance of something over $7,000 remained due.

The receiver filed an answer to the intervening petition in substance admitting its allegations, but stating that there was not attached to the contract or made a part of it a statement under oath of the seller showing the amount of the claim; and that there was no affidavit to the contract when filed that the same was a copy of the original; and further that the instrument was not filed by the equipment company and recorded by the recorder of Hocking county, Ohio, "in accordance with the provisions of section 4152 of the Revised Statutes of Ohio"; and further that after the delivery of the equipment many persons became creditors of the brick company, among whom were common laborers whose claims, amounting to $18,986.58, had been assigned by the brick company to another company named the Logan Supply Brick Company; that the latter company claimed to have a lien upon all the property of the Logan Brick Manufacturing Company, lessee and conditional purchaser of the equipment, under the Revised Statutes of Ohio. After describing the nature and object of the original suit in which the receiver was appointed, the receiver prays that the intervening petition be dismissed. Under a supplemental intervening petition stating that the equipment was deteriorating in value, a consent order was made finding the value of the equipment to be $6,000, and directing that the equipment company should have title to and possession of the equipment upon executing bond providing for paying that sum in the event the receiver should be adjudged to be the owner of the shovel. It was afterwards stipulated that the intervening petition should be amended by inserting a provision of the contract requiring that there be attached to the equipment prior to delivery a name plate bearing the words "property of the Cincinnati Equipment Company," and further that the plate was so attached, and that it so remained until after the appointment of the receiver. The cause was submitted to the court upon the intervening petition as so amended, the amended answer of the receiver, and the bill and answer filed in the original suit; whereupon the court below held, as before indicated, in favor of the receiver.

A. L. Smith and J. B. Kelley, for appellant.

E. J. Marshall, for appellee.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). It is not contended that the equipment company placed on the conditional contract of lease and sale the sworn statement of the amount of its claim, as required by section 4155—2 of the Ohio Statutes, or that it caused the instrument to be indorsed and an entry thereof to be made in the recorder's office, as provided by section 4152; nor is it denied that the effect of such failure under the first section mentioned was in terms to render the instrument "void as to all subsequent mortgagees and creditors." It is insisted, however, that the conditional instrument was good as between the parties to it, and that the receiver is in no better position than that of the conditional lessee and purchaser. One theory of this contention, as we understand it, is that the bill under which the receiver was appointed did not state facts sufficient to warrant the appointment of the receiver; and that, although the brick company by its answer admitted the averments of the bill and consented to the appointment of the receiver, the appointment was not justifiable.

It is to be observed that the intervener stated nothing in the form of pleading in the court below to challenge either the sufficiency of the

bill or the appointment of the receiver; nor is anything touching the sufficiency of the bill stated in specific terms in any of the assignments of error. Yet it is true that among the matters submitted at the trial below were the bill and answer in the original suit, and the learned trial judge regarded the bill as sufficient to warrant the receivership. We shall therefore assume for the purposes of the case that it is open to appellant, except so far as the right has been waived, to test the sufficiency of the bill in the main suit.

Jurisdiction of the parties was acquired through diversity of citizenship. The introductory portion of the bill contains an averment that complainant "on its own behalf and on behalf of such other creditors of the defendant, the Logan Brick Manufacturing Company, as shall elect to join in the prosecution of this suit, brings this its bill of complaint," etc. The bill contains averments to the effect that complainant had theretofore recovered judgment in the common pleas court of Lucas county against the defendant for the sum of $3,235.69 with interest; that a writ of execution was issued to the sheriff of that county and returned unsatisfied "for want of goods, chattels, and real estate whereon to levy"; that a writ of execution was also issued to the sheriff of Hocking county, Ohio, who levied upon certain real estate described in the bill, "there being no goods and chattels whereon to levy"; that in August, 1900, the brick company had delivered to the Security Trust Company of Toledo its deed of trust conveying a portion of the property described and covering the personal property of the defendant to secure $50,000 of its bonds; that the Security Savings Bank & Trust Company, one of the defendants, had succeeded to the rights of the Security Trust Company; that in December, 1906, the brick company delivered its deed of trust to its codefendant conveying all the real property described in the bill and covering the personal property of the defendant to secure payment of $225,000 of its bonds. Both mortgages are alleged to have been duly recorded, at times stated, in Hocking county, where the real estate is situated. It is averred that the principal place of business of the brick company, as well as that of the trustee under the mortgages, was in Toledo, and that such trustee by virtue of the deeds of trust claimed to have a first lien upon all the property of the defendant "to secure the payment of the bonds" before referred to. It is then averred, in substance, that defendant had on hand contracts and orders for a large amount of brick, which could be manufactured and sold at a profit, and, unless a receiver was appointed, the defendant would be "obliged to close down its plant, discharge its employés, and will be unable to fill said contracts and orders, and said plant and property can be sold at a much larger amount if kept operated and sold as a going concern than if it is closed and sold under execution at law; that its good will is valuable and can only be preserved by keeping said plant in operation"; and further that defendant owned a large number of accounts receivable for merchandise sold, and a larger percentage of them could be collected if the plant were kept in operation than if it were closed; that excepting the real estate and accounts receivable described the property of the company was insufficient "to satisfy the claim of plaintiff or the other creditors"; that the assets of the company were situated

in Toledo, Lucas county, and the city of Logan, Hocking county; and that, unless they were "marshaled and protected by a receiver or receivers to be appointed," they would be subject to vexatious and costly litigation in both jurisdictions and would bring much less than their fair and reasonable value, to the detriment of the complainant and stockholders and creditors.

The prayer includes a request for an accounting to ascertain the amount due the trustee and bondholders under the mortgages and other creditors, also the number of bonds issued and outstanding, and the number used as collateral with the claims for which the bonds were so held; that a receiver be appointed to take over all books, papers, assets, and property of every kind wherever situated and belonging to the brick company; that the receiver be empowered and directed to prosecute all actions necessary to secure possession of the property, and to operate the plant, factory, and business of the brick company, to purchase necessary materials, to borrow money, and to issue receiver's certificates, etc., also to sell the whole or such parts of the property as might be necessary to pay and discharge the claim of plaintiff and the claims of other creditors; that the court ascertain all the respective liens and priorities, if any exist, in favor of creditors, and upon sale that the sale's proceeds be applied in payment of the claim of plaintiff and the other claims as they might be ascertained by the court; that all creditors be required to intervene and assert their claims and rights and be enjoined from instituting or prosecuting suits against the property of defendant without first obtaining an order of the court. By its answer the defendant admitted the averments of the bill and consented to the appointment of a receiver.

The order of the court recites the appearance of complainant and the brick company, the filing of the answer, and a motion in accordance with the prayer of the bill for an order of injunction and the appointment of a receiver. By the order Degnan was appointed receiver of the brick company and of all its property, real, personal, and mixed, including all stocks, bonds, credits, things in action, etc., and clothing him with all rights usually conferred upon receivers in chancery; directing him at once to take possession of all such property wherever found so that it might be safely and advantageously used and sold; and enjoining all persons from interfering with his possession, use, and operation of the property, vesting in him extensive power and control respecting the property and business. It was further ordered that the receiver give immediate notice by publication of his appointment and of the order.

Two of the objections urged against the bill are, first, that it is not a creditors' bill, and, second, that it does not contain an express averment of insolvency; the idea being to show a failure to secure the lien of an ordinary creditors' bill, and particularly a failure to state a financial condition of the debtor corporation that would impress upon its property a trust for the benefit of its creditors. Plainly the ultimate purpose of the objections is to test the sufficiency of the proceeding to fasten the claims of creditors on the corporate property. Whatever might be said of a bare averment of insolvency, it is certain that such a condition may be deduced from facts averred; and, if there be aver-

ments of facts sufficient, a court cannot escape giving to them their natural and reasonable effect. As stated by Judge Gilbert in Pacific Northwest Packing Co. v. Allen (Ninth Circuit) 109 Fed. 515, 518, 48 C. C. A. 521, 524, in passing upon an appeal involving an order confirming the appointment of a receiver:

"We think it may be inferred from the allegations of the bill that the defendant corporation was at the time of the filing of the bill insolvent, and that the complainant's security, without the intervention of the court by a receiver, would have been insufficient."

The order appointing the receiver does not state any specific ground upon which it was based. The learned trial judge thought that "the bill should be construed as charging insolvency," saying further:

"It is true that it does not allege insolvency in so many words. But it alleges facts from which insolvency is the reasonable inference, to wit, that a judgment has been obtained and execution thereon returned unsatisfied, and that the plant cannot and will not be operated unless a receiver is appointed, thus indicating an inability to obtain means to operate it."

Citing, among other decisions, Terry v. Tubman, 92 U. S. 156, 160, 23 L. Ed. 537, where Justice Hunt said:

"A judgment and execution unsatisfied are evidence of insolvency, or inability to collect. They are, however, evidence only; and the fact may be established as well by other evidence, among other modes, by an assignment and continued suspension of business, or other notorious indications."

The intervener cannot at most be in a better position than that of a general demurrant. The averment that the company would be "obliged to close down its plant, discharge its employés," etc., signified a financial condition preventing the company from prosecuting the objects for which it was created. The averment that aside from the real estate and accounts receivable the property of the company was, as claimed, "wholly insufficient to satisfy the claim of plaintiff or other creditors," cannot be interpreted with respect alone to complainant's unsatisfied judgment and the agreed value of the shovel. The averment must be construed as an entirety and as relating at least to the judgment and also the labor claims. These claims were earned before the original suit was begun and were set up by answer before the value of the shovel was agreed upon. Then there was the alleged financial inability to fill orders, carry out contracts, or to continue business at all; even wages, as before shown (and this is no stronger than the averment covering the fact), had accumulated during nearly four months to the amount of over $18,000 and were being carried through another company. It is true that there is no averment that the real estate upon which the mortgages had been given was not worth more than the outstanding bonds; indeed, the number of bonds outstanding, whether through sales or pledges, was not stated, nor was it stated that the conditions of the mortgages had been broken. But if, in spite of other averments tending strongly to show inability of the debtor to meet its obligations, it be assumed that the interest on the mortgage bonds was paid as it accrued, still we do not see how it can be inferred that the bonded indebtedness was not in some form outstanding; for if the bonds were worth anything and were not out-

standing, or even if the business was yielding any material profit, it is hardly conceivable that the wages account would have been suffered to accumulate for the long time and to the amount stated, not to speak of the failure to pay the judgment. Hence, unless the learned trial judge meant by his finding of insolvency to use the term in the sense in which it is defined by section 1, cl. 15, of the present bankruptcy act,[1] we approve of the conclusion. But we understand counsel's insistence to be that insolvency within the meaning of that definition should be averred. We do not regard that as the true meaning of the conclusion, nor do we think such a conclusion is either necessary or sustainable in this case.

"Insolvency," as counsel urge it, is statutory, and in administering the bankruptcy act must be strictly adhered to. Duncan v. Landis (Third Circuit) 106 Fed. 839, 858, 45 C. C. A. 666. Insolvency has, however, another and different meaning. To illustrate, we may refer to the definition given by the Supreme Court when considering the term "insolvency" under the bankruptcy act of 1867, which did not define the term. As stated by Justice Clifford in Dutcher v. Wright, 94 U. S. 553, 557, 24 L. Ed. 130:

"'Insolvency,' in the sense of the bankrupt act, means that the party whose business affairs are in question is unable to pay his debts as they become due, in the ordinary course of his daily transactions." Wager v. Hall, 16 Wall. 584, 599, 21 L. Ed. 504; Toof v. Martin, 13 Wall. 40, 47, 20 L. Ed. 481.

Insolvency was many years ago defined in Ohio to be (Mitchell v. Gazzam, 12 Ohio, 315, 336):

"In the mercantile sense, it means a person unable to pay his debts according to the usages of trade. But, in the broad sense used by the statute, it means a person whose affairs have become so deranged that he is unable to pay his debts as they fall due; and if from such a deranged state of his affairs, and the sense of inability to meet his moneyed engagements, he should transfer his property to a person to pay his debts, we should regard such assignment as made in contemplation of insolvency, and within the meaning of the statute."

This definition has been followed in Ohio circuit and common pleas courts. Am. Hosiery Co. v. Baker, Assignee, 18 Ohio Cir. Ct. R. 604, 605; Perkins v. Scott, 9 Ohio Cir. Ct. R. 207, 215; Remington & Son v. Central Press Ass'n Co., 3 Ohio N. P. 258, 263; Baker v. Fraternal Mystic Circle, 32 Wkly. Law Bul. 84, 85.

In American Can Co. v. Erie Preserving Co. (C. C.) 171 Fed. 540, 542, it is said:

"The allegations in the bill that the defendant could not pay its current obligations as they matured, and that it was unable in the ordinary course of its business to pay its existing and enforceable liabilities, was a proper and sufficient allegation of insolvency. Brouwer v. Harbeck, 9 N. Y. 593; 16 Am. & Eng. Ency. of Law, 636; Buchannon v. Smith, 16 Wall. 277 [21 L. Ed. 280]; Herrick v. Borst, 4 Hill (N. Y.) 652. 'Insolvency,' as the term is used in equity, is clearly differentiated from the meaning which is given it by the bankruptcy act."

See, also, Citizens' Bank & Trust Co. v. Gold Co. (C. C.) 106 Fed. 97, 100; In re Douglas Coal & Coke Co. (D. C.) 131 Fed. 769, 774, 779; In re Edward Ellsworth Co. (D. C.) 173 Fed. 699, 700.

Now, still further averments are to be considered in connection with

[1] U. S. Comp. St. 1901, p. 3419.

this interpretation of the financial condition of the company. The assets of the company were held in two counties separated by considerable distance. They were subject to hostile litigation on the part of creditors. Complainant, having failed to recover by execution on its judgment, initiated proceedings on behalf of itself and all such creditors as might elect to join in the prosecution of the suit to marshal and conserve the assets including the good will, and ultimately to bring them to sale and apply the proceeds in payment of the claims of all the creditors. It is said that this was not necessary because the complainant might have levied its execution at law upon the shovel now in controversy. This is but challenging the jurisdiction on the ground that complainant had an adequate remedy at law.

It is to be remembered, however, that the defendant in the original suit admitted the averments of the bill and consented to the appointment of the receiver. Since the intervener has failed to aver or to prove collusion between the parties to the original suit or anything tending to show a design to impose upon the court, we must conclude that the act of the defendant in the original suit was a rightful submission to the jurisdiction of the court. The intervener therefore cannot be heard to reopen the case on any such ground. The principle to which allusion is made is a general one and was sustained by a full citation of the authorities by the present Mr. Justice Lurton in Horn v. Pere Marquette R. Co. (C. C.) 151 Fed. 626, 634. Among the objections passed upon was one that the bill under which the receiver was appointed in that case was filed by a single unsecured creditor who had no judgment and who claimed no lien. In the course of the opinion it was said:

"A most absurd result would ensue if, when the corporation has submitted to the jurisdiction of the court, either as a court of equity or to the local jurisdiction, a creditor could come in, or, when brought in, might reopen the matter of jurisdiction over the debtor corporation. If such an objection is not waived once for all, so as to close the question as to stockholders and creditors, what number of creditors would conclude the rest?"

Also, Re Metropolitan Railway Receivership, 208 U. S. 90, 109, 110, 28 Sup. Ct. 219, 52 L. Ed. 403.

Moreover, whatever might have been done by prompt and direct procedure, we do not think objection to the jurisdiction in equity was taken here in proper time. As stated by Justice Brewer in Brown v. Lake Superior Iron Co., 134 U. S. 530, 536, 10 Sup. Ct. 604, 606, 33 L. Ed. 1021, adopting the language of the court in an earlier case:

"* * * If the objection of want of jurisdiction in equity is not taken in proper time, namely, before the defendant enters into his defense at large, the court, having the general jurisdiction, will exercise it; and in a note [in 1 Dan. Ch. Prac. (4th Am. Ed.) p. 550] many cases are cited to establish that, 'if a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff had a plain and adequate remedy at law. This objection should be taken at the earliest opportunity.'"

We call attention also to the language of the same learned justice in Hollins v. Brierfield Coal & Coke Co., 150 U. S. 371, 380, 381, 14 Sup. Ct. 127, 37 L. Ed. 1113.

True, as stated in Brown v. Lake Superior Iron Co., the subject-matter must be within the jurisdiction of the court. But the claim of lack of jurisdiction in equity which is under consideration at this moment is that complainant could have caused his execution at law to be levied on the shovel. As before pointed out, it filed its intervening petition without suggestion of defect in jurisdiction. Thereafter the receiver filed his answer setting up, among other things, claims of laborers; still later the intervener and the receiver entered into a stipulation concerning the shovel, and then the intervener took possession and gave the indemnity bond before the trial.

We are therefore constrained to hold, for the purposes of this case, that the court below through diversity of citizenship obtained jurisdiction not only of the parties to the original suit, but also of a subject-matter equitable in its nature and embracing admitted facts sufficient to justify the appointment of the receiver.

What then is the right of the intervener to the shovel equipment? The question of the effect of the intervener's delinquency under the Ohio statute respecting the absence of a sworn statement of the amount of its claim and the filing of the instrument is not an open one in this court. This results from the decision of this court in Dolle v. Cassell, 135 Fed. 52, 56, 67 C. C. A. 526, construing the Ohio statute as placing unfiled conditional contracts of sale upon the same basis as unfiled chattel mortgages respecting their invalidity as against creditors. The Supreme Court sustained this proposition in York Mfg. Co. v. Cassell, 201 U. S. 345, 351, 26 Sup. Ct. 481, 50 L. Ed. 782, although it reversed the decision of this court on other grounds. Attention is directed also to the very clear decision recently announced by Judge Sater in Hamilton v. David C. Beggs Co. (D. C.) 179 Fed. 949.

Now, it is admitted, as of course it must be, that in Ohio a chattel mortgage unfiled and so void as to creditors is void also as to the mortgagor's assignee in insolvency (Hanes v. Tiffany, 25 Ohio St. 549); that this is likewise true as to the personal representative of a deceased insolvent (Kilbourne v. Fay, 29 Ohio St. 264, 23 Am. Rep. 741); and also as to a receiver of an insolvent corporation, where there has been a failure to record its real estate mortgage (Cheney v. Maumee Cycle Co., 64 Ohio St. 205, 60 N. E. 207). But it is sought to distinguish these Ohio decisions from the present case on the ground that insolvency was shown in each of the Ohio cases. While this is true, and apparently true in the sense that the liabilities exceeded the assets, yet the absence here of that degree of insolvency does not seem to us to be decisive of the case in hand.

This case is to be determined not merely by the degree of insolvency deducible from the original bill, but also by its nature and object, together with the effect of the seizure made of the property of the debtor. It is to be recalled that the suit is representative; it is maintained for the benefit of all creditors who join in its prosecution. Intervener's counsel claims, and so admits, that by the levy made on the judgment complainant obtained a lien on the realty, subject to the mortgages, citing Martin v. Alter, 42 Ohio St. 94. Whatever estimate complainant's officers may have placed on the lien, it seems

voluntarily to have opened its suit to all the creditors, whether lienors or not. It is therefore not necessary to consider the bill either as a creditors' bill or as one in the nature of a creditors' bill. Bispham's Eq. § 527, and citations; 4 Pom. Eq. § 1415, note; Freedman's Savings & Trust Co. v. Earle, 110 U. S. 710, 4 Sup. Ct. 226, 28 L. Ed. 301. It is sufficient that on its face it was brought in the interest of all the creditors. Upon Degnan's appointment as receiver of the company and its property, all persons were enjoined from interfering with his possession or control, and from instituting or prosecuting any suits against the debtor company or any of its property, and all were required to intervene in the cause and assert their claims there. And it must still be kept in mind that the end in view was a sale for the benefit of the creditors.

Hence, in considering the question of relation between the receivership and the creditors, it will not do to say either that the creditors were not represented, or that their rights were not involved, simply because insolvency in the sense urged by counsel does not appear. If insolvency in that sense had been specifically alleged and admitted, it is difficult to see how the order could have been more sweeping, or how the property could have become "a trust fund for the benefit of corporate creditors" (Rouse v. Merchants' National Bank, 46 Ohio St. 493, 504, 22 N. E. 293, 298, 5 L. R. A. 378, 15 Am. St. Rep. 644), any more certainly or effectually than it has here. The contention, then, that the receiver in the present case is in no better position than that accorded to a trustee in bankruptcy is not tenable, because the feature of the decision in York Mfg. Co. v. Cassell, 201 U. S. at page 353, 26 Sup. Ct. 481, 50 L. Ed. 782, which holds that bankruptcy does not operate as an attachment or lien in favor of creditors, has not either in terms or principle any relation to the rule prevailing in Ohio as to the effect of a receivership upon the rights of creditors. It ought to follow that the present case is ruled by Cheney v. Maumee Cycle Co. and the principle of Dolle v. Cassell which was affirmed by the Supreme Court. In our judgment this is but applying a settled rule in Ohio touching the effect of the appointment of a receiver and a seizure made through him.

It is true that in Cheney v. Maumee Cycle Co. the court, in answer to an objection made to the pleadings, cited Rouse v. Bank in support of the proposition that the property of an insolvent corporation which has ceased to do business and carry on the objects of its creation "constitutes a trust fund for the equal benefit of its creditors"; but it is equally true that, in speaking of the receiver and his right to contest an unrecorded real estate mortgage, it was said (64 Ohio St. 214, 60 N. E. 209):

"His appointment is an equitable remedy, bearing the same relation to courts of equity that proceedings in attachment bear to courts of law; the appointment being treated as an equitable execution. The purpose is to secure the means for satisfying the final order and judgment of the court in the action, and the effect of the seizure is to place the property seized in the custody of the court. Railroad Co. v. Sloan, 31 Ohio St. 1."

After speaking of section 5590, vesting power in receivers under control of the court to take possession of property "and generally to

do such acts respecting the property as the court may authorize," which seems to us to be only declaratory, the court proceeded (64 Ohio St. 215, 60 N. E. 209, 210):

"It follows from this that the effect of the appointment, and the seizure of the property by the receiver, was to fasten the claims of creditors upon it and to give that officer control over it for the benefit of creditors, and in this respect his relation to it was, for all practical purposes, the same as that which an assignee would have had. The property thus sequestered was held by the receiver as effectually as an assignee could have held it, or as creditors could have held it by attachment or levy. In no other way than through him could the rights of creditors be worked out, and, in this aspect of the case, he represented the creditors rather than the debtor."

It is to be observed of that case that neither in the syllabi, in which all the judges concurred, nor in the opinion, was the right of the receiver in the interest of the general creditors to the proceeds of sale in dispute made to depend upon the question or degree of insolvency, but rather upon the appointment and seizure.

As stated by Judge Cochran in his decision of the case at bar:

"By the appointment of the receiver, if not before, the assets of the debtor defendant have been judicially seized, and such seizure is the equivalent of the levy of an attachment or execution. The receiver, it is true, has simply the custody of the assets and no more. But such is the case where an attachment or execution has been levied. The levying officer has custody and no more."

He cited the case of H. K. Porter v. Boyd (Third Circuit) 171 Fed. 305, 312, 96 C. C. A. 197, 204, 205, where, in speaking of a seizure made through a receivership, it was said:

"It is of no importance what term may with most propriety be used to designate the taking and holding possession of the property of the Construction Company by the ancillary receiver. Whether it be called an equitable execution, an equitable attachment, a sequestration, or an impounding, is a matter of indifference. It does not affect the essential nature of the thing done. The receiver entered into and held possession by virtue of his appointment and the mandate of the court. A sheriff enters into and holds possession of property under an execution or attachment by virtue of his election or appointment and the order or writ of the court. In either case, the property is compulsorily taken by judicial authority for the purpose of being applied to the payment of claims, theretofore or thereafter to be ascertained in nature or amount."

See, also, Farmers' L. & T. Co. v. Minneapolis E. & M. Works, 35 Minn. 543, 546, 29 N. W. 349; Harrison v. Warren Co., 183 Mass. 123, 124, 66 N. E. 589; Hamilton v. David C. Beggs Co., supra, 179 Fed. at page 952.

We therefore hold that the degree of insolvency of a debtor is not the test, certainly not the only test, of the power of a court through its receiver to enforce the rights of creditors respecting an instrument that is declared by the statute to be void as to creditors; and that the effect of the appointment of the receiver and the seizure of the property in the present case operated "to fasten the claims of creditors upon it and gave that officer control over it for the benefit of creditors." We are not unmindful of the claim that placing and keeping the name of the conditional lessor on the shovel as owner preserved the vendor's rights. The name-plate did not even state the true re-

lation of the parties. The claim really means that the will of the lessor may be substituted for that expressed by the lawmaking power itself. No decision is cited in support of the claim. It is admitted that, if execution had been levied upon the shovel, the right of the execution creditor would have prevailed. Since the seizure actually made was the equivalent of such a levy, we are unable to see why it should not have the same effect.

The decree of the court below must be affirmed, with costs.