HOPKINS v. LANCASTER, State Treasurer, et al.

(District Court, N. D. Alabama, N. D. at Montgomery. July 30, 1918.)

No. 228.

1. COURTS ☞366(7)—FEDERAL COURTS—DECISIONS OF STATE COURT.
    On suit by statutory receiver of an Illinois insurance company, the federal court is bound by the decision of the Illinois Supreme Court as to the interpretation of the receiver's statutory powers.

2. INSURANCE ☞50—STATUTORY RECEIVERS—POWERS.
    A statutory receiver of an Illinois insurance company is, under the laws of that state, invested with the title to all the assets of the company, wherever situated.

3. RECEIVERS ☞210—STATUTORY RECEIVERS—RIGHT TO SUE.
    A statutory receiver, invested with title to the assets of a dissolved corporation, may sue in the courts of a state foreign to the state of his appointment.

4. RECEIVERS ☞210—POWER OF INTERVENER TO QUESTION RIGHT OF COMPLAINANT TO SUE.
    An intervener, in a suit by the statutory receiver of a foreign insurance company against the treasurer of a state, can only raise the question whether he is a creditor entitled to share in the distribution of funds deposited with the treasurer, etc.

5. PARTIES ☞47—RIGHT OF INTERVENER—CLAIMS.
    A stranger cannot intervene for the purpose of defeating the entire suit, nor for the purpose of litigating with the complainant his right or title to any relief; and if it is desired to set up a new and independent claim, it must be done by an original bill in the nature of a cross-bill.

6. CONTRACTS ☞212(2)—PERFORMANCE—TIME.
    Where no definite time for performance is fixed by the contract, the law implies a reasonable time.

7. LIENS ☞7—EQUITABLE TIME—CREATION.
    Where a foreign insurance company agreed to pay interveners a fixed sum in the event they secured legislation which would enable the company to withdraw securities deposited with the state treasurer, etc.,

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*held*, that interveners secured no equitable lien by implication or otherwise on such securities.

8. LIENS ⬤⇒7—EQUITABLE LIENS—CREATION.

An equitable lien may arise by express agreement or implication, as where a party innocently and under mistake of title makes improvements permanently beneficial to another's property.

In Equity. Suit by James S. Hopkins, as receiver of the Illinois Surety Company, against W. L. Lancaster, as Treasurer of the State of Alabama, and others, in which Meyer & Goldman intervened. Decree for complainant.

A. J. Hopkins, of Chicago, Ill., and M. M. Ullman, of Birmingham, Ala., for plaintiff.

E. S. Thigpen, Asst. Atty. Gen., of Montgomery, Ala., for defendant.

Steiner, Crum & Weil, of Montgomery, Ala., for interveners.

HENRY D. CLAYTON, District Judge. The original bill in this cause was filed on March 13, 1918, by Hopkins, as receiver of the Illinois Surety Company, against W. L. Lancaster, as treasurer of the state of Alabama, and others. The bill shows that Hopkins is the statutory receiver of an insolvent insurance company, which was dissolved upon a bill filed in the superior court of Cook county, Ill., in conformity with the statutes of the state of Illinois; said bill having been filed to that end by a majority in number and interest of the stockholders of said company on April 19, 1916, and a decree of dissolution having been entered in said cause by the court after the appearance and answer of the Illinois Surety Company.

[1-3] This court is bound by the decisions of the highest court of the state of Illinois as to the interpretation of the powers of such receiver. As construed by the Supreme Court of Illinois, a receiver appointed in the manner shown in the bill in this cause is invested with the title to all the assets of the dissolved corporation wherever situated. Republic Life Ins. Co. v. Swigert, 135 Ill. 150, 173, 174, 25 N. E. 680, 687, 12 L. R. A. 328. A statutory receiver, invested with title to the assets of a dissolved corporation, may sue in the courts of a state foreign to the state of his appointment. Such a receiver is not a mere chancery receiver, but he derives his powers from the statute, and not from the manner of his appointment or the decree of the court. Great West. Mining Co. v. Harris, 198 U. S. 561, 574, 25 Sup. Ct. 770, 774, 49 L. Ed. 1163. In that case the Supreme Court, speaking of Booth v. Clark, 17 How. 322, 15 L. Ed. 164, said:

"In that case it was held that a receiver is an officer of the court which appoints him, and, in the absence of some conveyance or statute vesting the property of the debtor in him, he cannot sue in courts of a foreign jurisdiction, upon the order of the court which appointed him, to recover the property of the debtor."

But here there is a statute providing for the dissolution of an insolvent corporation, and that statute, as construed by the highest court of the state in which the receiver is appointed, vested the title to the

assets of the dissolved corporation in the receiver. The law seems to be well settled that such receiver may sue as of right in the courts of a foreign jurisdiction, and such courts will in respect to such questions of title accept the construction put upon it by the highest court of the state. Bernheimer v. Converse, 206 U. S. 516, 534, 27 Sup. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292.

Upon the hearing heretofore had in this court upon the answer filed by the defendant Lancaster, the state treasurer, a decree was entered in which the court found the allegations of the bill to be true, assumed jurisdiction of the cause, and ordered the state treasurer to turn over to the clerk of this court the securities, which are now in the possession of the court; the state treasurer having complied with the order so made.

[4, 5] The interveners, Meyer & Goldman, are in no position to question the right of the petitioner to sue. In the case of Ex parte Gray, 157 Ala. 358, 364, 47 South. 286, 288 (131 Am. St. Rep. 62), the Supreme Court said:

"Our own court has recognized the right of intervention, but held that a stranger could not intervene for the purpose of defeating the entire suit, nor for the purpose of litigating with the complainant his right or title to any relief. * * *" Renfro Bros. v. Goetter, Weil & Co., 78 Ala. 311, 313–315; Curtis v. Curtis, 180 Ala. 64, 60 South. 167, 168; Wightman v. Yaryan Co., 217 Ill. 371, 380, 75 N. E. 502, 108 Am. St. Rep. 258, 3 Ann. Cas. 1089; Cincinnati Equipment Co. v. Degnan, 184 Fed. 834, 841, 107 C. C. A. 158.

Mr. Justice Lurton in Horn v. Pere Marquette R. R. Co. (C. C.) 151 Fed. 626, 634, said:

"A most absurd result would ensue if, when the corporation has submitted to the jurisdiction of the court, either as a court of equity or to the local jurisdiction, a creditor could come in, or, when brought in, might reopen the matter of jurisdiction over the debtor corporation. If such an objection is not waived once for all, so as to close the question as to stockholders and creditors, what number of creditors would conclude the rest?" In re Metropolitan Railway Receivership, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403.

It seems to me that the interveners, Meyer & Goldman, are entitled to raise only one question, and that is whether or not they are of the class of creditors who are entitled to share in the distribution of the fund in the hands of the court. It is shown that the funds now in the hands of the court were deposited by the Illinois Surety Company with the treasurer of the state of Alabama in trust for the benefit of the holders of certain obligations thereafter to be issued by the Illinois Surety Company. The statute of Alabama, under which the deposit was made, as construed by the Supreme Court, confines those entitled to share in this fund to judgment creditors who have recovered judgments against the Illinois Surety Company upon an official bond or a judicial bond; that is to say, upon the bond of some public official of the state of Alabama, or a bond given by a party in a judicial proceeding in Alabama. It is shown by the petition of intervention that Meyer & Goldman are not judgment creditors, nor are they the holders of a judicial bond or an official bond. They are not, there-

fore, entitled to subject the fund now in the hands of the court to the payment of any claim asserted in the petition of intervention.

But it is contended that this court, having acquired jurisdiction of this cause, and having in its possession certain funds belonging to the Illinois Surety Company, or its successors in interest, will not return these funds to a foreign jurisdiction, and compel citizens of Alabama holding a lien thereon to litigate with the receiver in a foreign state. If Meyer & Goldman were creditors of the class entitled to subject the fund to the payment of their claims, this court would certainly render such decree as would be necessary to protect their lien before permitting the receiver to take the assets located in the state of Alabama out of the jurisdiction of this court; but, since they are not of that class, it is still contended that as interveners they may assert and foreclose an equitable lien upon these securities. As said by the Supreme Court of Alabama in Curtis v. Curtis, 180 Ala. 64, 69, 60 South. 167, 168:

"Our own court has recognized the right of intervention, but held that a stranger could not intervene for the purpose of defeating the entire suit, nor for the purpose of litigating with the complainant his right or title to any relief; also that, if it is desired to set up a new and independent claim, it must be done by an original bill in the nature of a cross-bill. Renfro Bros. v. Goetter, Weil & Co., 78 Ala. 311, 313–315." Ex parte Gray, 157 Ala. 358, 47 South. 286, 288, 131 Am. St. Rep. 62.

[6-8] The court has carefully read the correspondence passing between these parties, the interveners and the plaintiff, and this correspondence is the only contract out of which the claim, upon which the intervention is based, arises. The court finds from this correspondence that the Illinois Surety Company employed Meyer & Goldman to procure the delivery of the bonds in question to the Illinois Surety Company, and agreed to pay Meyer & Goldman, in the event they were successful, the sum of $1,000. This appears from the letter of the plaintiff's president, written December 30, 1914, where he said:

"I have been to considerable trouble and expense myself in making two trips to Alabama, and our company thinks that the fee you suggest is a little high; but I have decided that I will pay $1,000 to you as your fee, if you are successful in getting the bonds restored to the Illinois Surety Company without any strings. What I mean by that is that I do not want to be required to give another surety bond and pay annual premiums to the company for getting our bonds from the state treasurer. I think they should be delivered to us, and if you can procure that by legislation, or by satisfying the present official who has charge of these bonds that under the law we are entitled to the return of the bonds, and they are returned to us, I will give you a fee of $1,000. If you are not successful, I don't think we should pay you anything; and, if these terms are satisfactory to you, you can proceed with the matter."

No definite time having been fixed by the contract for its performance, the law would grant a reasonable time. It further appears from the correspondence that the Illinois Surety Company paid to Meyer & Goldman $500 for their expenses in attending the Legislature in securing the passage of the act designed to enable the company to withdraw these securities. The act of the Legislature was passed; but still the company failed to secure the return of the bonds. It is true

254 F.—13

that on July 6, 1915, one of the interveners wrote to the president of the company that he had succeeded in passing the bill through the Legislature, and felt that he had fairly earned the fee of $1,000; but immediately thereafter, on July 10, 1915, the president of the company wrote to Meyer & Goldman that he had no objection to the fee of $1,000 if Meyer & Goldman secured the return of the bonds, and in this letter agreed to pay the expenses, not to exceed $500, and concluded his letter by saying:

"If this is satisfactory to you, you can proceed at once to Montgomery and take up this work of securing the legislation as outlined in your letter to me of July 6th."

On August 7th, intervener Goldman advised by letter that the bill had been signed, and asked for a check for $1,000 and a check for $250, balance of expense money. On August 9th, the president of the surety company acknowledged receipt of this letter and stated:

"The $1,000 I will send you as soon as the Illinois Surety Company receives its bonds, now in the hands of the treasurer of your state, as per my letter to you of December 30, 1914."

Accepting this as satisfactory, it appears from the correspondence that on September 27, 1915, Goldman went to Montgomery for the purpose of attempting to secure the return of the bonds and calling upon the insurance company for further directions as to how to proceed. The company replied to this letter under date of October 5, 1915, and from that date forward until the Illinois Surety Company was dissolved in April, 1916, more than six months later, there does not appear to have been any efforts made by Meyer & Goldman to secure the return of these bonds. A reasonable time certainly elapsed before the receiver was appointed.

The court is of the opinion, and so holds, that the interveners are not entitled to any equitable lien upon the funds. An equitable lien may arise by express agreement or by implication. There is clearly no agreement for a lien in this case, because there is no intention expressed to appropriate as security for the debt the bonds on which the lien is claimed. 25 Cyc. 665, 666. An equitable lien may arise by implication, and such a lien arises where a party innocently and in good faith, but under a mistake as to the condition of the title, renders services, makes improvements, or incurs obligations that are permanently beneficial to another's property. 25 Cyc. 667.

There is no room in this case under the evidence to find that an equitable lien arose by implication. The case of Barnes v. Alexander, 232 U. S. 117, 34 Sup. Ct. 276, 58 L. Ed. 530, and the case of McGowan v. Parish, 237 U. S. 285, 35 Sup. Ct. 543, 59 L. Ed. 955, are not in conflict with the opinion here expressed, because in those cases there was an expressed intention to give to the creditor an interest in the property itself as security for the debt.