BIGLOW et al. v. CONRADT et al.

(Circuit Court of Appeals, Ninth Circuit. March 7, 1908.)

No. 1,457.

1. MINES AND MINERALS—POSSESSION—RIGHTS OF LOCATOR.

Where, prior to the time plaintiffs' predecessors in interest set out the corner stakes of their mining claim in question, they had no possession of any part of defendants' claim, which at all times was in defendants' possession, and was being worked by one of the defendants at the time plaintiffs' predecessors entered on defendants' claim for the purpose of setting out extension stakes to include the ground in conflict as a part of complainants' claim, such entry was a mere interruption, within the rule that, as against a mere intruder, the possession of a mining claim by a locator who has complied with the law is of itself sufficient to prevent the intruder, even by a peaceable entry, from acquiring a right to possession.

2. SAME—DISCOVERY.

Where plaintiffs' predecessors sunk a discovery shaft within the original boundaries of their claim six or seven months before they attempted to extend the boundaries so as to include that portion of defendants' claim in controversy within an overlap, such discovery had relation to the original boundaries of plaintiffs' claim, and not the claim within the extended boundaries, so as to confer on plaintiffs' predecessors any rights in the overlap on which defendants subsequently made the first discovery; defendants' occupation and discovery being without opposition.

[Ed. Note.—Sufficiency of discovery of mineral characteristics to support mining location, see note to Lange v. Robinson, 79 C. C. A. 6.]

In Error to the District Court of the United States for the Third Division of the Territory of Alaska.

This is an action in ejectment, brought in the District Court of Alaska, Third Division, by the plaintiffs in error against the defendants in error, to recover possession of certain ground within the overlapping lines of their respective claims. The claims are located on and near Esther creek, in the Fairbanks recording district. In the spring of 1904 one Carruthers located Creek Claim No. 6 Below Discovery on Esther creek. The course of Esther creek at this point is from west to east. In August, 1904, Carruthers, who then had associated with him one Anderson, ascertained that claim No. 6 was largely in excess of 20 acres, the quantity of placer ground limited to one claim by section 2331 of the Revised Statutes [U. S. Comp. St. 1901, p. 1432]. They accordingly, acting together, on September 14, 1904, located the downstream excess of No. 6 across the creek in the name of Anderson, and designated the excess as "No. 6A Creek Claim." In locating the boundaries of the new claim they set two stakes, an upper or western and a lower or eastern stake, with a base line connecting them. These two stakes are designated as center stakes on the claim. The lower center stake was the old lower center stake of the original No. 6 Creek Claim, and they set up a new upper center stake for No. 6A, which also became the lower center stake of No. 6 Creek Claim, as readjusted and limited to the proper area. Anderson placed location notices upon both the upper and lower center stakes of the new claim, 6A, setting forth that he claimed 1,000 feet upstream from the lower stake and 1,000 feet downstream from the upper stake, and 490 feet on each side of both stakes. The two latter boundaries were further identified by two pencil arrows on each stake, one pointing to the right and the other to the left, at right angles to the base line from center stake to center stake, and over each arrow Anderson placed in pencil the figures and word "490 feet," thus giving notice on each stake that he claimed a location 1,000 feet down the stream from the newly determined lower boundary of the original No. 6 claim, by 980 feet wide, extending across the stream. The actual distance from the upper center stake to the

lower center stake was 872 feet. A notice of the location of Creek Claim No. 6A was filed and recorded September 13, 1904.

On March 19, 1904, one Sjoblon, as agent in fact for the locator, William Salmon, located Bench Claim No. 6 Below Discovery on the right limit or south bench, and marked its courses with stakes, so that its boundaries could be readily traced. A notice of the location of Bench Claim No. 6, right limit, was filed and recorded June 15, 1904. In April, 1905, the defendant Sjoblon began work on this claim and started to sink a discovery shaft. After sinking the shaft to a depth of 14 feet Sjoblon met with an accident and abandoned the shaft, and two months later commenced work sinking a shaft at another place on the claim. On the last of April or the 1st of May, 1905, Anderson and Carruthers set out four corner stakes for Claim No. 6A, which gave that claim new boundaries. From the upper center stake to the upper right-hand or southwest corner stake the distance was 520 feet, instead of 490 feet, as originally stated on the notice on the center stake; and from the upper center stake to the upper left-hand or northwest corner stake the distance was 491 feet, instead of 490, as stated in the notice. From the lower center stake to the lower right-hand or southeast corner stake the distance was 609 feet, instead of 490 feet, as stated in the notice; and from the lower center stake to the lower left-hand or northeast corner stake was 499 feet, instead of 490 feet. In other words, the claim as located and described by notice on September 1, 1904, was 1,000 feet (actually 872 feet) by 980 feet. The claim as staked on the last of April or 1st of May, 1905, was 1,000 feet (actually 872 feet) by 1,011 feet on the upper or western boundary and 1,129 on the lower or eastern boundary. The extension of the claim on the left or north bank is immaterial. The extension of the claim on the right or south bank was made to include a strip of ground 30 feet wide on the upper or western boundary and 119 feet on the lower or eastern boundary, by 872 feet long east and west. It is in this strip on the southern boundary of plaintiffs' Creek Claim 6A and the northern boundary of defendants' Bench Claim No. 6 that the overlap occurs in the claims of plaintiffs and defendants. As plaintiffs' Claim No. 6A was located and described on September 1, 1904, there was no conflict with the defendants' Bench Claim No. 6 on the right limit, located and staked nearly six months previously, on March 19, 1904. The overlap and conflict arises by reason of plaintiffs' new staked corners made on the last of April or 1st of May, 1905; nor was there any conflict between the Creek Claim No. 6A and Bench Claim No. 6 as the notices were filed for record—the first on September 13, 1904 and the latter on June 15, 1904. Prior to about May 1, 1905, when Carruthers and Anderson set out their right limit or south side stakes so as to include the overlap, they had no possession of any part of the Salmon Bench Claim, which at all times was in the possession of the defendants. When Carruthers and Anderson set out the south corner stake of the extended boundaries for their Creek Claim No. 6A, they did so without opposition of any person whatsoever and in a peaceable manner. At that time neither of the defendants, nor any one in their behalf, was upon or engaged in any work upon any part of the ground designated as the overlap.

The first and only discovery of gold made on plaintiffs' Claim No. 6A was in September or October, 1904, when Anderson and Carruthers sunk a discovery shaft to the depth of 39 feet, when they found some color of gold. This shaft was on the left or north side of the creek and within the lines described in the original notice posted on September 1, 1904. The first discovery of gold made on defendants' Claim No. 6 right limit on the south side of the creek was made on the 7th of July, 1905, in a shaft designated as "No. 9." This shaft was located on the common corner of Bench Claims Nos. 5 and 6 and a fractional claim designated as "Hardin Fraction." The defendants began work March 22, 1906, on a shaft designated as "No. 7" and reached bed rock in this shaft on April 17, 1906, and continuously worked the same as a paying mine until the commencement of this action. This shaft was within the staked boundaries of Bench Claim No. 6 and within the limits of the extended boundaries of Claim No. 6A, designated as "the overlap." Berry, one of the plaintiffs, loaned the defend-

ants his boiler to enable them to sink this shaft No. 7, and he and his co-plaintiff Biglow examined the work, panned the dirt coming out of the shaft, had full knowledge that the defendants were on the ground which constitutes the overlap, and made no objection to their work until after they had reached bed rock in the shaft.

The case was tried by the court without a jury. The court found the facts and the conclusions of law in favor of the defendants. and entered judgment accordingly. The case comes here on a writ of error. There is no bill of exceptions.

John L. McGinn and Martin L. Sullivan (Campbell, Metson, Drew, Oatman & Mackenzie and E. H. Ryan, of counsel), for plaintiffs in error.

Heilig & Tozier (T. C. West, of counsel), for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The case is here on the sufficiency of the facts found by the court to support the judgment. The findings have not been carefully prepared, and do not state ultimate facts with fullness or precision; but a fair and reasonable construction of all the findings, taken together, will enable this court to determine the questions in controversy. O'Reilly v. Campbell, 116 U. S. 418, 420, 421, 6 Sup. Ct. 421, 29 L. Ed. 669. Plaintiffs' claim to the right of possession of the overlap rests mainly upon two facts drawn from the findings of the court. The first of these facts is that when Carruthers and Anderson, plaintiffs' predecessors in interest, about May 1, 1905, set out the corner stakes of Creek Claim No. 6A, extending the southeast corner of that claim so as to include the ground in controversy, they did so without opposition of any person whatsoever and in a peaceable manner, and that at that time nei-ther of the defendants nor any one in their behalf was upon or engaged in work upon any part of the ground in dispute in this action designated as the overlap. But the court also found that prior to the time Carruthers and Anderson set out the corner stakes for their Creek Claim No. 6A they had no possession of any part of the defendants' bench claim, which at all times was in the possession of the defendants, and was being worked in April, 1905, by one of the defendants who was then engaged in sinking a shaft on the claim. The entry of Carruthers and Anderson upon defendants' claim for the purpose of setting out a stake for the extension of their Creek Claim No. 6A was, therefore, an intrusion. As against a mere intruder, the possession of a mining claim by a locator who has complied with the law is of itself sufficient to prevent the intruder, even upon a peaceable entry, from acquiring a right of possession. 1 Lindley on Mines, §§ 216, 218, 219; Haws v. Victoria Copper Mining Co., 160 U. S. 303, 316, 16 Sup. Ct. 282, 40 L. Ed. 436; McIntosh v. Price, 121 Fed. 716, 718, 58 C. C. A. 136; Eilers v. Boatman, 3 Utah, 159, 2 Pac. 66.

The second fact upon which plaintiffs rely is that, when Carruthers and Anderson went upon defendants' claim and set their corner stakes for their Creek Claim No. 6A, no discovery of gold had been made upon defendants' claim. It is therefore contended that as there was no discovery by defendants there was no location by them; but plaintiffs are not in a position to .urge this objection to defendants' claim as a

reason for appropriating a portion of it by an overlapping location. To do this they must have had some superior right to the ground within such overlap, and this they did not have by reason of any discovery relating to a claim including the overlap. Plaintiffs' position is this: That Carruthers and Anderson in September and October, 1904, sunk a discovery shaft to the depth of 39 feet, where they found colors of gold, upon which they claimed a discovery for 6A. This was nine or ten months before the discovery of gold upon defendants' claim, which, as before stated, was made on July 7, 1905. But this discovery shaft was sunk within the boundaries of the original claim, and six or seven months before Carruthers and Anderson attempted to extend the boundaries of their claim so as to include that portion of defendants' claim within the overlap. This discovery—and no other was made—had relation, therefore, to the original boundaries of plaintiffs' claim, within which it was made, and fixed their right of possession to the claim within such boundaries; but it had no relation to the claim with the extended boundaries, made six or seven months later, so as to include a portion of defendants' claim in the overlap, and the discovery made within the original boundaries of the claim fixed no right of possession to such extended boundaries as against the defendants' right of possession of their claim.

Moreover, the defendants were the first and only persons to make a discovery of gold in the overlapping ground, and the occupation of the ground by the defendants for mining purposes which enabled them to make this discovery was without opposition on the part of the plaintiffs. It therefore appears, from the facts found, that the plaintiffs acquired no right of possession in the overlapping ground, by extending the boundaries of their claim so as to include it, as against defendants' actual possession of the ground as part of their claim. This we understand to be the law as declared in Belk v. Meagher, 104 U. S. 279, 284, 26 L. Ed. 735.

The findings being sufficient to support the judgment, the judgment of the court below is affirmed.