## In re MARTIN.

MARTIN v. GLOBE BANK & TRUST CO. OF PADUCAH, KY., et al.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1912.)

Nos. 2,091, 2,160.

1. BANKRUPTCY (§ 353*)—FUNDS—DISTRIBUTION.
    Where a fund in the hands of a bankrupt's trustee for distribution was obtained as the result of proceedings in the state court to set aside

a gift by the bankrupt of certain lands, void as to existing creditors under a state statute, the rights of creditors to participate must be determined by a consideration of the state statute, as affected by the bankruptcy law, which is also a law of the state, and paramount and exclusive with reference to matters to which it rightfully applies.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 541–544; Dec. Dig. § 353.*]

2. BANKRUPTCY (§ 142*)—FUNDS—PROPERTY FRAUDULENTLY CONVEYED.

Ky. St. 1903, § 1906, provides that every gift of real or personal property made with intent to hinder, delay, or defraud creditors shall be void; and section 1907 declares that every gift made by a debtor of his estate without valuable consideration shall be void "as to all his then existing liabilities," but not as to subsequent creditors, nor as to purchasers with notice. Bankr. Act July 1, 1898, c. 541, § 67c, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), provides for the dissolution of a lien created by or obtained in or pursuant to any suit, including an attachment upon mesne process begun against bankrupt within four months; and section 67f provides that all levies, judgments, attachments, or other liens obtained through legal proceedings against any person who is insolvent at any time within four months shall be discharged and released, and shall pass to the trustee as a part of the bankrupt's estate. *Held*, that the state statute authorizing vacation of a voluntary conveyance by the bankrupt by an existing creditor did not create any lien on the property, nor do more than give a right of action, and hence, where existing creditors did not sue to set aside such voluntary conveyance until within four months prior to the grantor's bankruptcy, they were not entitled to the proceeds of the property sold on vacation of the conveyance, but such proceeds passed to the trustee for distribution according to the bankruptcy act.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 222; Dec. Dig. § 142.*]

Appeal from the District Court of the United States for the Western District of Kentucky.

In the matter of bankruptcy proceedings of T. J. Atkins. Petition by Arthur Y. Martin, trustee of the bankrupt, to review an order providing for the distribution of certain assets for the Globe Bank & Trust Company of Paducah, Ky., and certain other creditor banks of the bankrupt. From an order of the District Court, affirming the referee's order, the trustee appeals. Reversed and remanded.

December 28, 1908, T. J. Atkins was, under involuntary proceedings in bankruptcy previously begun in the court below, adjudicated a bankrupt, and Martin was appointed trustee. Within four months of the commencement of these proceedings, three banks, viz., Globe Bank & Trust Company, First National Bank of Paducah, and Old State National Bank of Evansville, instituted suits in the McCracken circuit court at Paducah, Ky., against Atkins (and his vendees named in the deed referred to below) to recover judgments upon claims they held against him, and to set aside as fraudulent and void the deed of conveyance just mentioned, and at the same time caused attachments to be levied upon the real estate so conveyed. Atkins delivered this deed, December 4, 1906, for the purpose of making a gift of the land described in it to his son and his son's children. Atkins was then indebted to the three attaching banks. Two sections of the statutes of Kentucky were relied on in these suits. One was section 1906, which provides that "every gift * * * of any estate, real or personal * * * made with the intent to delay, hinder or defraud creditors * * * shall be void. * * *" And section 1907 provides that "every gift, conveyance * * * made by a debtor * * * of his estate, without valuable consideration therefor shall be void as to all his then existing liabilities, but shall not,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on that account alone, be void as to creditors whose debts or demands are thereafter contracted, nor as to purchasers with notice of the voluntary alienation or charge; and though it be adjudged to be void as to a prior creditor, it shall not therefore be deemed to be void as to such subsequent creditors or purchasers." Carroll's Ky. St. 1903, pp. 772, 774.

In January, 1909, the Globe Bank & Trust Company filed two petitions in the present bankruptcy proceeding for the purpose of objecting to the right and jurisdiction of the bankruptcy court to interfere with the petitioner in its suit in the state court. In the later petition, however, it prayed that the bankruptcy court decline to entertain jurisdiction for the setting aside of the fraudulent conveyance, and permit and direct the trustee in bankruptcy to join petitioner as coplaintiff in the prosecution of the action in the state court to set aside "such fraudulent conveyance for its benefit, and for the benefit of the trust estate. * * * "

February 23, 1910, the court below made an order providing, among other things, that any right or lien acquired by the attachment lis pendens, or otherwise, upon the property of the bankrupt involved in the action pending in the McCracken circuit court, "be, and the same shall, until the further order of the court herein, be preserved for the benefit of the bankrupt's estate as provided in section 67f of the bankruptcy act"; and directing that the trustee, either on his own motion or the order of the referee, apply to the circuit court for leave to be made a party to the action for the purpose of making the lien or right available for any creditors of the bankrupt, who may show a right to share in any funds acquired in the action. April 8, 1909, the referee made an order authorizing the trustee to institute an action in the McCracken circuit court to recover the property, and also to have himself substituted as plaintiff in any of the actions that had theretofore been brought in that court by creditors of the bankrupt's estate for like recovery.

April 9, 1909, the trustee commenced an independent suit in the circuit court to set aside the deed of conveyance mentioned, which, by order of that court, was consolidated with the actions of the three creditor banks. Upon issues joined, judgment was entered in June, 1909, holding that the deed was without valuable consideration, and was voluntary and constructively fraudulent and void as against the debts sued on by the banks, and that they were entitled to recover in sums stated, which were liabilities of the bankrupt at the time of the delivery of the deed, but dismissing the actions as to creditors whose claims accrued subsequently to the delivery of the deed, and also dismissing the action of the trustee so far as it sought to set aside the deed for the benefit of creditors of the bankrupt estate, whose debts were created after the execution of the deed. Sale of the property was ordered, and the commissioner was directed to collect the proceeds and hold them subject to the final orders of the court "in the further and final disposition of such proceeds, or subject" to the order of the bankruptcy court in the present bankruptcy proceeding. The trustee in bankruptcy was appointed by the court as commissioner to execute the judgment.

The causes were taken by the trustee and others (among whom were the grantees in the conveyance in dispute) to the Court of Appeals of the state of Kentucky. A copy of its opinion appears in the record, and the case is reported in 124 S. W. 879, 881. For the purpose of pointing out the true scope and intent of the judgments of the state courts, we quote from the opinion of the Court of Appeals. When passing upon the appeal of the trustee, the court said: "The judgment does not undertake to dispose of the proceeds that may be realized from the sale of the property, but leaves this question open for future determination, and we do not doubt that, when the court comes to make an order concerning the disposition of the proceeds in the hands of the trustee as special commissioner, it will direct that the proceeds be paid over to the trustee in bankruptcy to be administered as a part of the estate of the bankrupt in the bankruptcy court. In anticipation of what we assume the court will do, we may, with propriety in this opinion, direct that it make such orders. If the court in the judgment had undertaken to divert (divest) the trustee of the control of this fund, we would

upon this point reverse the judgment, with directions to proceed as indicated, but, as the court did not make such an order, we are of the opinion that on the appeal of the trustee the judgment of the lower court should be affirmed."

On the appeal of the grantees in the deed of conveyance, the judgment was reversed because of error in fixing the date of delivery of the deed, the court saying (124 S. W. 882): "To what extent this will affect the judgment creditors we are not advised; but only those creditors whose debts were created previous to December 4, 1906 (date of delivery of deed), are entitled to participate in the proceeds. realized from the sale of the property. If the proceeds amount to more than sufficient to pay such·debts, the surplus should be paid to the grantees in the deed."

Under the mandates of the Court of Appeals, the Circuit Court entered judgment in favor of the banks in the same sums as were entered in its judgment of June, 1909, before alluded to, except that it reduced the amount of the judgment of the Globe Bank to the extent of $1,285 which represented indebtedness incurred by the bankrupt subsequently to the date of the deed in question.  It was further adjudged that as to all other debts, including those represented in the consolidated actions by the trustee in bankruptcy, the "deed is not fraudulent, but is valid as provided and adjudged in the former judgment rendered in these consolidated actions on June 19, 1909, as aforesaid, and that 'no trust for the payment of any of such debts so created subsequent to the deed is herein declared or adjudged.  It is now further adjudged that the proceeds arising from the sale of the property described in the former judgment rendered June 19, 1909, aforesaid, shall be held by Arthur Y. Martin, trustee, and as special commissioner of this court under the terms and directions of such former judgment until disposed of and distributed as is directed·in such judgment."

The banks having proved their claims (setting up their actions as liens, etc.) in the bankruptcy proceeding, the referee on May 23, 1910, entered an order finding that those banks were the only creditors of the bankrupt whose claims were existing at the date of the delivery of the deed, and that the proceeds derived from the sale of the property conveyed by the deed were insufficient to pay their debts, and that they were entitled to the entire fund, and directed the trustee to pay the same to them pro rata upon their respec-·tive debts. Upon petition of the trustee for review, this order was affirmed; the court below being of opinion that the voluntary conveyance, though void as to the then existing creditors of the bankrupt, was not so as to creditors whose debts were created after the date of the deed; also "that the lis pendens liens and the attachments in the suits in the state court were, under the order of this court, entered herein on February 18, 1909, preserved for the benefit of the estate"; further, "that the construction of the Kentucky Statutes by the Court of Appeals in the cases referred to is binding upon this court, even if it did not (as it does) agree with that decision."

W. F. Bradshaw (Bradshaw & Bradshaw, on the brief), for appellant.

D. H. Hughes (T. L. Crice and Wheeler & Hughes, on the brief), for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SATER, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). The question presented for our decision is whether the order of distribution is correct.  The order provides that the proceeds, $16,-146.58, derived from the sale of property conveyed by the bankrupt, shall be paid pro rata upon the claims alone of the three banks.  While the order was made in the matter of the bankruptcy of T. J. Atkins, two cases nominally are docketed in this court by the trustee;

one on appeal and the other by petition to revise in matter of law. Since the cases are based on the same order and no objection is made by either side touching the remedies so chosen to bring the question into this court, we need not concern ourselves with any question of remedy or jurisdiction. Beiser v. Western German Bank, 167 Fed. 486, 93 C. C. A. 122 (C. C. A. 6th Cir.); In re Worcester County, 102 Fed. 808, 811, 42 C. C. A. 637 (C. C. A. 1st Cir.).

Was the court below, as respects its order of distribution, bound by the judgments of the state courts, or did those courts intend them to have such effect? The Court of Appeals held that the judgment of the McCracken circuit court did not undertake to dispose of the proceeds of sale, and it had no doubt that, when that court came to make an order concerning the disposition of the proceeds, it would direct that they be paid over to the trustee in bankruptcy "to be administered as a part of the estate of the bankrupt in the bankruptcy court"; and, in anticipation of what the Court of Appeals assumed that the court below would do, it declared that it might "with propriety in this opinion, direct that it make such orders." It was then stated:

"If the court (below) in the judgment had undertaken to divert (divest) the trustee of the control of this fund, we would upon this point reverse the judgment, with directions to proceed as indicated."

It is true that, when passing upon the appeal of the grantees in the deed in question, the court did say that only those creditors whose debts were created prior to the delivery of the deed were entitled to participate in the proceeds realized from the sale of the property. The court, of course, did not know at that time whether the aggregate claims of the banks would or would not exhaust the property covered by the deed, for the property had not been sold. The essence of this portion of the opinion, as it seems to us, is a statement of the extent to which the Atkins land, or the proceeds derived from a sale, could be seized and applied to the payment of creditors, and of the disposition that should be made of any surplus that might remain. We are unable to perceive any other way to reconcile the position taken by the court when stating its reasons for not reversing the judgment upon the appeal of the trustee, with its conclusion that the surplus should be turned over to Atkins' grantees.

When we come to consider the judgment entered by the state circuit court under the decision of the Court of Appeals, ordering, among other things, that the proceeds of sale should be held by the trustee in bankruptcy as special commissioner of the state court under the terms of its former judgment "until disposed of and distributed as directed in such judgment," we are brought to an inquiry into the meaning of its former judgment. The commissioner was directed by that judgment to hold the proceeds subject to the final orders of the court—

"or subject to the District Court of the United States * * * under its final distribution of the entire assets of the estate of such bankrupt * * * and the rights of all creditors in such bankrupt proceedings in the distribu-

tion or disposition of such proceeds by the bankrupt court are hereby reserved and not determined but left open for final adjudication among them in such proceedings in bankruptcy."

We are disposed to believe that the true construction of these two judgments of the state circuit court is the same as that which the Court of Appeals placed on the first judgment. This is made clear by what has been done. The trustee on June 20, 1910, reported to the bankruptcy court that he had in his hands the balance for distribution of cash and sale bonds received from the sale of this property, and prayed the court to adjudge to whom he should pay the proceeds, whereupon the court ordered the bonds into his hands to be collected and the proceeds to be held by him subject to the future orders of the court.

[1] Now, in determining how this fund must be distributed in the bankruptcy court, it will not do simply to consider the statute of the state of Kentucky on which reliance is placed by the banks. We must also consider the authorities which hold that the bankruptcy law is a law in that state, as also in the several states, and is just as binding on the citizens and courts thereof as are the state laws. Thompson v. Ragan, 117 Ky. 577, 581, 78 S. W. 485; Bank of Columbia v. Overstreet, 10 Bush (Ky.) 148, 150, 151; Claflin v. Houseman, Assignee, 93 U. S. 130, 136, 23 L. Ed. 833. Indeed the bankruptcy law is paramount; and the jurisdiction of a bankruptcy court as regards matters rightly brought therein is exclusive. In re Watts & Sachs, 190 U. S. 1, 27, 23 Sup. Ct. 718, 47 L. Ed. 933; Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 307, 32 Sup. Ct. 96, 56 L. Ed. ——; Mondou v. N. Y., N. H. & H. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. ——.

It will be borne in mind that the banks in whose favor the order of distribution was made commenced their actions and caused attachments to be levied within four months of the filing of the petition in bankruptcy against Atkins. The only liens that any of these banks ever secured upon the property described in the deed in dispute were obtained within that period or during the pendency of the bankruptcy proceedings. It is not claimed that the statute (quoted in the statement) under which the deed was set aside, created a lien. The most in this respect that can be said of Atkins' delivery of the deed of gift is that it created in each of the banks a right of action. In re Huxoll, 193 Fed. 851, decided by this court February 13, 1912, and cases there cited; Carroll's Ky. Stat. 1899, § 1907a, p. 756. Section 67f of the bankruptcy act provides:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien

shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

Paragraph "c" of that section also treats of liens created by attachment on mesne process and provides for their preservation, and in the last clause enacts:

" * * * If the dissolution of such lien would militate against the best interests of the estate of such person, the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the holder of such lien and empowered to perfect and enforce the same in his name as trustee with like force and effect as such holder might have done had not bankruptcy proceedings intervened."

The court below made an order providing that any right or lien acquired by attachment, lis pendens or otherwise, "be and the same shall, until the further order of the court herein, be preserved for the benefit of the bankrupt's estate as provided in section 67f of the bankruptcy act."

Thus the effect of the bankruptcy proceedings to dissolve the attachments was avoided. None of the attaching creditors made any objection to the order, and indeed the Globe Bank had (as appears in the statement) asked for an order for its benefit, and also that of the trust estate.

In First National Bank v. Staake, 202 U. S. 141, 146, 26 Sup. Ct. 580, 582 (50 L. Ed. 967), Justice Brown, having occasion to consider the portion of section 67f under which this order of the court below was made, said:

" * * * So much of the value of the property attached as is represented by the attachments passes to the trustee for the benefit of the entire body of creditors, that is, 'for the benefit of the estate'; in other words, the statute recognizes the lien of the attachment, but distributes the lien among the whole body of creditors."

This court followed that construction in Re Kohler, 159 Fed. 871, 874, 87 C. C. A. 51, 54. After referring to First National Bank v. Staake, Judge Richards, speaking for the court, said:

"Here certain attachments had been levied within four months. The court held they could be annulled, or the lien of the attachments could be preserved under the bankruptcy act for the benefit of the estate. There was no method suggested of passing over the property covered by these attachments to the creditors who had secured them."

See, also, First National Bank v. Guaranty Title & Trust Co., 178 Fed. 187, 192, 101 C. C. A. 507 (C. C. A. 3d Cir.); Rock Island Plow Co. v. Reardon, Trustee, 222 U. S. 354, 32 Sup. Ct. 164, 56 L. Ed. ——. If these decisions are applicable to the instant case, it is plain that the rights of the banks under their suits and attachments were, through section 67f and the order of the bankruptcy court, passed to the trustee for the benefit of the bankrupt's estate, subject to the power of the bankruptcy court to cause either the property or the

proceeds of sale to the extent that they were affected by the suits and attachments, as well as the judgments, to be administered for the equal benefit of all the creditors of the bankrupt.

[2] It is insisted, however, that these decisions are not relevant, because under section 1907 of the statutes of Kentucky the deed was valid, except as to those creditors whose debts were existing at the date of its delivery; and that, since the banks were the only creditors of that class who obtained liens through the commencement of suits and levies of attachments, the benefits of such liens cannot be extended to any one else. The portions of the bankruptcy act which we have quoted, and which were passed on in the decisions cited, do not make any such distinction as this. Those provisions of the act are broad and comprehensive. Section 67c embraces "a lien created by or. obtained in or pursuant to any suit * * * including an attachment upon mesne process which was begun against a person within four months * * *"; and section 67f includes "all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months. * * *" As respects liens so acquired within the four months, it is difficult to conceive of language of wider scope than this. It is not claimed that Atkins was not insolvent at the time these suits were commenced and the attachments levied, and the reason for this is obvious. Atkins was adjudicated a bankrupt within the next succeeding four months, and the present controversy leaves no room for doubt as to his insolvency at the date of the suits and attachments. If the distinction urged on behalf of the banks were sound, it is hard to perceive why it would not be applicable to every case where some of a body of creditors, who all admittedly have equal rights, are more diligent than the others in securing liens through attachments or any of the other means stated in 67c and 67f; for all the practical results and hardships among the creditors would in that event be identical with those complained of here. It is plainly within the power of Congress to enact that liens so acquired within a specified period shall, through bankruptcy proceedings, be applied to the common benefit of all the creditors of a bankrupt. As Justice Brown said in First National Bank v. Staake, 202 U. S. 148, 26 Sup. Ct. 583, 50 L. Ed. 967:

"To what extent liens obtained by prior judicial proceedings shall be recognized is a matter wholly within the discretion of Congress."

The learned justice answered an argument that section 67f refers only to liens upon property which, if such liens were annulled, would pass to the trustee of the bankrupt. The basis of the argument was that but for the attachment the property covered by the unrecorded deed of Baird to the Roanoke Furnace Company would pass to the company; and, after recognizing that the argument was perhaps justified by the decision in Hewitt v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, the justice said (Staake Case, 202 U. S. 149, 26 Sup. Ct. 584, 50 L. Ed. 967):

"But the extent to which the bankruptcy court shall recognize the rights obtained by creditors upon property attached as the property of the bankrupt,

though in fact such property had been conveyed by an unrecorded contract, is a matter solely within the discretion of Congress. The liens acquired in this case were liens upon property, which as to attaching creditors was the property of the bankrupt, and Congress may lawfully insist that it shall be reckoned as a part of his estate, and pass to the trustee."

So the insistence that Atkins' deed was operative as against him is futile in a case like this. It is admitted that the deed was 'voidable from its inception as against Atkins' then existing liabilities, although it was not necessarily so as to creditors whose debts were thereafter contracted. The property and the deed conveying it were in this plight at the time the banks commenced their suits and caused their attachments to be levied; and consequently the liens acquired through the suits and the attachments were upon property which, as to the attaching creditors, was the property of the bankrupt, and so fell within the provisions of section 67f. We must therefore reckon with the operation and effect of the provisions of section 67f upon the property which was held under these conditions; and Atkins' grantees and the three creditor banks were, from the time of the registration of the deed, chargeable with knowledge of the operation and effect of these provisions of the bankruptcy act. Conceding that the banks could through legal proceedings have secured the exclusive application of the property and its proceeds toward the payment of their debts four months or more prior to the beginning of bankruptcy proceedings, still, since those creditors chose to delay the exercise of their rights until they reached a time within the four months' period, they are met with the difficulty that through those proceedings their rights respecting the property or its proceeds passed to the trustee for the benefit of all the creditors.

In Clarke v. Larremore, 188 U. S. 486, 489, 23 Sup. Ct. 363, 364 (47 L. Ed. 555), conditions similar in principle to those we are now considering were passed upon. There a sheriff had sold property on execution, but before paying the money to the judgment creditor, though still within the time allowed for return of the execution, bankruptcy proceedings were begun against the judgment debtor. It was held that the money did not belong to the judgment creditor, and that under .67f the right to it passed to the trustee in bankruptcy. In the course of the opinion Justice Brewer said respecting the effect of the bankruptcy proceedings:

"They took away the foundation upon which the rights of the creditor, obtained by judgment, execution, levy, and sale, rested. The duty of the sheriff to pay the money over to the judgment creditor was gone and that money became the property of the bankrupt, and was subject to the control of his representative in bankruptcy."

The only perceivable difference between that case and the present case is that the trustee in bankruptcy there was not as the trustee here was a party to the case in which the judgment was recovered. Does this difference amount to a material distinction? We think that the mission and authority of the trustee to enter the McCracken circuit court were simply to recover the portion or the proceeds of the bankrupt's estate that were open to recovery on the part of creditors of the bankrupt, and that the

193 F.—54

proceeds recovered in virtue of the rights of such creditors were to be brought into possession of the bankruptcy court for distribution according to the bankruptcy act. Indeed, with the commencement of the bankruptcy proceeding, the control of the property and the purpose to which it should be applied were fixed and declared by the bankruptcy act itself, so far as the property was affected by the liens in dispute. Acme Harvester Co. v. Beekman Lumber Co., supra, 222 U. S. 307, 32 Sup. Ct. 300, 56 L. Ed. ——; First National Bank v. Staake, supra. The fact, therefore, that the trustee was a party to the state suit, cannot operate to change these conditions.

In Miller v. New Orleans Fertilizer Co., 211 U. S. 496, 505, 29 Sup. Ct. 176, 180 (53 L. Ed. 300), a question arose in a bankruptcy proceeding against a copartnership touching the distribution of assets belonging to one of the individual members of the firm. It was pointed out by the present learned Chief Justice that, while under the law of Louisiana the creditors of a partnership are as to firm assets given preference over creditors of individual members of a firm, yet that partnership creditors and creditors of the individual partners have equal rights in the individual assets. Of course, this last feature is opposed to the corresponding feature of the bankruptcy act. The trustee in bankruptcy brought an action in a state court to annul any transactions affecting the property of the bankrupts, and to recover judgment for the benefit of the bankrupt estate. Certain other actions were then pending in the state court to recover upon claims held against the firm and for the further purpose of having certain sales of property set aside and the proceeds applied to the payment of their claims, which sales had been made by one member of the firm of his individual property. The trustee was by order of the state court substituted as party plaintiff in those suits in his capacity as trustee of the bankrupt estate. In the course of the opinion it was said:

"Assuming, therefore, that the trustee was properly authorized, it follows that he was entitled to preserve and enforce the privilege or lien, which arose in favor of the creditors, resulting from their pending action, even although the cause of action arose from the state law, and the application of that law was essential to secure the relief sought. To the accomplishment of this end, the bankrupt law was cumulative, and did not abrogate the state law."

Recalling the difference between the law of Louisiana and the bankruptcy act touching the distribution of assets belonging to individual members of a partnership, the following we think is controlling (211 U. S. 506, 29 Sup. Ct. 181, 53 L. Ed. 300):

"In view of the distinction between the estates of partnerships and the estates of the members of the firm, which is made by the bankrupt law, and the method of distribution for which that law provides, of course, the trustee will hold the fund as an asset of the estate of the individual member, and primarily for the benefit of his creditors."

Further, upon the question of distribution, the learned justice recognized the power of the state court to pass upon the question of preference, but denied its right to determine what creditors were to

participate in the distribution. He said (211 U. S. 506, 29 Sup. Ct. 181, 53 L. Ed. 300):

"The one (the question of preference) was within the province of the state court for the purpose of the case before it. The other (the matter of distribution) was a different question, depending upon independent considerations exclusively cognizable in the bankruptcy court."

And since the state court had itself so decided its judgment was affirmed.

It is not necessary to pass upon any of the other questions presented. We are constrained to hold that the order must be reversed, and the cause remanded for further proceedings consistent with this opinion.