## In re COOPER'S ESTATE.

### (District Court, S. D. Iowa, C. D.)

1. BANKRUPTCY ⬯184—CREDITOR'S RIGHT AGAINST TRUSTEE—STATUTES.

Under Code Iowa, § 2906, providing that no chattel mortgage shall be valid against creditors, unless in writing and recorded, and Bankr. Act July 1, 1898, c. 541, § 47a, 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), vesting the trustee with all rights, remedies, and powers of a creditor holding a lien on a bankrupt's property by legal or equitable proceedings, where a vendor of personalty to a bankrupt claimed a preference on the ground that he had a lien for part of the price under an unrecorded mortgage, such claim was invalid as against the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. ⬯184.]

2. SALES ⬯303—LIEN—BILL OF SALE—CONSTRUCTION.

Where a bill of sale conveyed certain chattels, "subject, however, to a certain promissory note for $3,500, * * * which said grantee assumes and agrees to pay," the instrument further providing that the property was free of all "liens and incumbrances," except as stated, which bill of sale was duly recorded, its language was not sufficient to create a lien in behalf of the vendor on the goods sold for the amount of the note.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 859; Dec. Dig. ⬯303.]

3. SALES ⬯303—LIEN—VALIDITY OF AGREEMENT.

Where the vendor of chattels sold them by bill of sale, which described the goods and stated it was given subject to a note assumed by the vendee, and that the property was free of all other "liens and incumbrances," the vendee orally agreeing, as part of the consideration for the goods, to pay the note, and that the vendor should have a lien upon the goods to enforce such obligation, as between the parties the vendor had an enforceable lien on the goods to secure the amount of the note.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 859; Dec. Dig. ⬯303.]

4. CHATTEL MORTGAGES ⬯150—RECORD—SUFFICIENCY.

To postpone an attaching creditor or a purchaser to a lien on chattels, the record of it must be such as to indicate to a reasonably prudent man facts which he can ascertain showing a lien; and unless the record indicates a lien, the creditor or purchaser is not bound by what it might disclose.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 246–252; Dec. Dig. ⬯150.]

5. CHATTEL MORTGAGES ⬯141—LIEN—PRIORITIES.

Where goods were sold, the vendee agreeing orally that the vendor should have a lien to secure part of the price, a subsequent chattel mortgagee of the vendee agreeing that its own lien should be junior, the vendor's lien was superior to the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 239, 244; Dec. Dig. ⬯141.]

In Bankruptcy. In the matter of the estate of William D. Cooper, bankrupt. On determination of priorities.

Oscar Strauss, of Des Moines, Iowa, for P. H. Bell.

E. J. Kelly, of Des Moines, Iowa, for People's Nat. Bank of Perry.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WADE, District Judge. The petitioner, P. H. Bell, on February 10, 1915, filed his petition and claim herein, alleging in substance that on or about the 14th day of February, 1914, he, the said P. H. Bell, sold and delivered to William D. Cooper, the bankrupt, by bill of sale, a certain stock of goods described, for the sum of $12,700. The bill of sale, as far as material to this case, is as follows:

"Know all men by these presents, that I, P. H. Bell, of the county of Dallas and state of Iowa, in consideration of the sum of twelve thousand seven hundred dollars ($12,700.00) to me in hand paid by W. D. Cooper, of the county of Dallas and state of Iowa (the receipt whereof is hereby acknowledged), have bargained and sold, and do by these presents grant and convey, unto the said W. D. Cooper the following goods and chattels, to wit: [Description of property.] Subject, however, to a certain promissory note of $3,500 dated December 18, A. D. 1912, payable to V. W. Sylvester, which note said grantee assumes and agrees to pay."

The said bill of sale further provides:

"And that the said personal property is free and clear of all liens and incumbrances, except as above stated."

In addition to the foregoing provisions of the bill of sale, it is alleged by Bell that the bankrupt, William D. Cooper, orally agreed, as part of the consideration for the purchase price of the stock of goods, that he, the said Cooper, should assume and agree to pay the above-described note of $3,500, which Bell had executed to Sylvester. In addition to the foregoing averments, it is further averred, in substance, that said Cooper orally agreed that the said Bell should have a lien upon the stock of goods to enforce the obligation of said Cooper to pay said note, and that said note has not been paid. Upon the foregoing facts, P. H. Bell claims a lien upon said stock of goods in the hands of the trustee for $3,500 and interest, and asks that said lien be established, and that he have preference therefor.

The People's National Bank also asks for preference in this estate, basing its claim upon a chattel mortgage to said bank, executed by Cooper, bankrupt, on February 14, 1914 (the same date as the bill of sale from Bell to Cooper was executed), securing notes in the aggregate sum of about $9,200. The bill of sale and the chattel mortgage were both recorded on the 18th day of February, 1914.

To the claim for preference by P. H. Bell, the trustee in bankruptcy, and also the People's National Bank, filed objections; and to the claim for preference made by the People's National Bank said P. H. Bell files objections, and asserts that his lien, claimed as aforesaid, is superior to any lien created by said chattel mortgage given to the bank.

The referee sustained the objections filed by the trustee and the objections filed by the People's National Bank, dismissed the application of P. H. Bell for the establishment of a lien, and allowed the claim of the People's National Bank as a preferred claim to the extent of the balance due upon its chattel mortgage aforesaid.

The case comes before this court upon the pleadings, no evidence having been taken by the referee; all questions having been presented upon objections and motions, so that for the purpose of this hear-

ing the court will have to assume that all the facts stated in the application of P. H. Bell are true.

The rights of the trustee in bankruptcy and of the People's National Bank being distinct and separate, it is necessary to consider them individually.

[1] First. Upon the allegations of the petition of P. H. Bell, is he entitled to the establishment of a lien as against the trustee in bankruptcy?

Considerable time has been devoted to the discussion of this question, because of the peculiar nature of the alleged lien claimed by Bell, and because of the change effected in the rights of a trustee in bankruptcy by reason of the amendment of June 25, 1910 (section 47a), of the Bankruptcy Law.

The determination of the rights of Bell and the trustee, depends upon the nature of the lien claimed by Bell. Bell's claim to a lien is not very definite. It is all in one count, and pleads the provisions of the bill of sale by which Bell transferred the title to the property to Cooper, the bankrupt, and also alleges an oral agreement between Bell and Cooper for a lien upon the stock of goods to secure the note for $3,500, which Cooper assumed and agreed to pay.

Were it not for the amendment of 1910, I would have no hesitation in holding, upon the conceded facts, that Bell would be entitled to a lien superior to any rights of the trustee, and it would not be necessary, in so holding, to determine the specific question as to whether or not the bill of sale created a lien, because the averments of the petition in which this lien is asserted also contain the allegation that there was an oral agreement that a lien should exist.

At this point it is well to construe the amendment of 1910 in connection with the statutes of Iowa relating to the recording of written instruments affecting personal property. As to the meaning of the amendment of 1910, numerous authorities have been cited; but it is not necessary to review them in detail, because I feel satisfied that the question is properly decided by the United States Circuit Court of Appeals of the Sixth Circuit in Potter Manufacturing Co. v. Arthur, 220 Fed. page 843, —— C. C. A. ——, 34 Am. Bankr. Rep. 75, in which the following language is used:

"2. It is the accepted construction of this statute in Ohio that such an unrecorded contract is not invalid as against creditors generally, but only as against those who, for themselves or by representation, fasten a lien upon the property in aid of their claims. See York v. Cassell, 201 U. S. 344 [26 Sup. Ct. 481, 50 L. Ed. 782], 15 Am. Bankr. Rep. 633. So far as the language of the statute goes, the priority which it gives to creditors may well be confined to those who gave credit subsequently to the conditional sale—Crucible Co. v. Holt (C. C. A. 6th Cir.) 23 Am. Bankr. Rep. 302, 174 Fed. 127, 98 C. C. A. 101, affirmed 224 U. S. 262 [32 Sup. Ct. 414, 56 L. Ed. 756]—though the contrary as to Ohio seems to have been taken for granted by this court. Foerstner v. Citizens' Co. (C. C. A. 6th Cir.) 26 Am. Bankr. Rep. 377, 186 Fed. 1 [108 C. C. A. 267]; Cincinnati Co. v. Degnan, 184 Fed. 834, 842 [107 C. C. A. 158]. However that might be, there is nothing in this record to show that any creditors now represented by the trustee became creditors before the bankrupts procured the machine, and so nothing to raise the question whether such creditors are excluded from the effect of the statute. If this question was material, the burden was on the vendor, under these circumstances, to show

that such creditors existed, and to show that the claims of subsequent creditors, if levied, and which would then pass to the trustee for the benefit of all creditors (In re Martin [C. C. A. 6th Cir.] 27 Am. Bankr. Rep. 545, 193 Fed. 841, 848 [113 C. C. A. 627]) would not exhaust the property. We therefore assume that creditors, with claims equal to the value of the machine, had on the date of filing the petition in bankruptcy, the right to fasten on the property a lien which, under the Ohio law, would prevail against the contract vendor.

"3. Under the rule of York v. Cassell, supra, this superior right did not pass to the trustee in bankruptcy, but he stood in the shoes of the bankrupt. This rule has been changed by the amendment of June 25, 1910, to section 47a (2), providing that as to property 'in custody' the trustee 'shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings'; and, of course, the nature and extent of these 'rights, remedies and powers' must be determined by the law of the state, where not inconsistent with the Bankruptcy Act. There is general agreement that the amendment of 1910 was made with the very purpose of changing the rule declared in York v. Cassell (Remington, vol. 3, §§ 1137 and 1212½; Loveland [4th Ed.] vol. 1, p. 767); and we think it clear that such was the effect, and that the trustee stands in the place of each creditor, and may assert the rights which any creditor would have had against the property 'in custody,' if that creditor, at the date of filing the petition in bankruptcy, had been holding an execution levy. See Massachusetts Co. v. Kemper (C. C. A. 6th Cir.) 34 Am. Bankr. Rep. 80 [220 Fed. 847, —— C. C. A. ——]. It cannot be said that the intent of the amendment was only to put the trustee in the position of a creditor who had, in fact, obtained a lien, because that was the law before the amendment. See section 67f [Bankr. Act (section 9651, Comp. St. 1913)], and In re Martin, supra; Foerstner v. Bank, supra; In re Rouse (C. C. A. 6th Cir.) 31 Am. Bankr. Rep. 115, 208 Fed. 881, 126 C. C. A. 90 [L. R. A. 1915B, 148].

"4. Since the conditional sale contract was, by law, required to be recorded, the notice attached to the machine that it remained the property of the vendor was ineffective. Cincinnati Co. v. Degnan, supra."

In my judgment this case properly decides:.

"That the trustee stands in the place of each creditor, and may assert the rights which any creditor would have had against the property 'in custody,' if that creditor, at the date of the filing the petition in bankruptcy, had been holding an execution levy."

This being the effect of the amendment of 1910, it is only necessary to decide, in order to determine what the law is as applied in Iowa, what the rights of a creditor with a levy by execution would be as against the liens claimed by Bell. I say "liens," because the averments of the application are broad enough to include a lien claimed by virtue of the reservations in the bill of sale, and also a lien claimed by virtue of the oral contract between the parties. Code Iowa, § 2906, provides:

"No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers, without notice, unless a written intrument conveying the same is executed, acknowledging like conveyances of real estate, and filed for record with the recorder of the county where the holder and the property resides."

It will be observed that this section of the statute requires that any sale or mortgage, to be valid against existing creditors or subsequent purchasers, be in writing and filed for record. The term "existing creditors" has been construed by the Supreme Court of Iowa to mean "creditors who, without notice of an unrecorded lien or title, have

acquired a lien by attachment or levy, or otherwise, upon the property involved." Orr v. Kenworthy, 143 Iowa, 6, 121 N. W. 539, 136 Am. St. Rep. 728.

The contract, whether oral or in writing, is good between the parties, but is invalid as to creditors who acquire a lien, and under the decisions of the Supreme Court of Iowa it is immaterial whether the debt upon which the lien is acquired, was created before or after the making of the mortgage. So that it is clear that, under the Bankruptcy Law and the Code of Iowa, a mortgage unrecorded, whether written or oral, is of no validity as against the rights of the trustee in bankruptcy.

It has been well suggested that bankruptcy proceedings suspend the rights of all creditors to secure liens by attachment or execution, and that the purpose of the amendment to the Bankruptcy Law was to invest the trustee, in behalf of all the creditors, with all the rights which any of the creditors might have in the absence of bankruptcy proceedings. In view of the foregoing, it is apparent that any lien created between the bankrupt and Bell by oral contract is invalid as against the trustee, and therefore the petition for preference, filed by Bell, in so far as the same is based upon any oral contract, must be denied, in so far as the rights of the trustee are concerned.

[2] It therefore becomes necessary to determine the sole remaining question between Bell and the trustee—whether by virtue of the language used in the bill of sale, which was duly recorded, a lien was created in behalf of Bell. At first, I was inclined to think that the bill of sale might be construed to create a lien; but upon earnest consideration I am compelled to hold otherwise. It is solely a question of course as to the intention of the parties at the time of the execution of the bill of sale. In determining the intention of the parties to a written contract, the court must take into consideration the language used, *and the language the parties did not use.* As a rule men, when preparing a written contract, include in it all the terms of the agreement, and, when there is ambiguity, we should consider the subject-matter, the ease or difficulty, depending upon the peculiar conditions, with which the parties might have expressed themselves as to their true intention, and the words used by them as found in the instrument.

Now, when it comes to looking at the language of the bill of sale, to determine whether a lien was created, we must bear in mind that, if the parties intended by that instrument that a lien should be created or reserved, it would have been a very easy matter for them to have so stated. It was not a matter difficult to state in ordinary language, and I am impelled to believe that, if it was the intention when the sale was made to Cooper that the bill of sale should give to Bell a lien or mortgage, the parties would have found language with which to describe it, so that the intention would be clearly apparent.

It is fundamental, of course, that meaning must be given to all the words used, if possible, and therefore we look to the language of the bill of sale, relied upon by Bell as establishing a lien, to see if it can have any meaning, if this meaning is denied to it. It will be

observed that the bill of sale is for a consideration of $12,700, "the receipt whereof is hereby acknowledged." Now it is possible, if not, indeed, probable, that the language, "subject, however, to a certain promissory note of $3,500, dated December 18, 1912, payable to V. W. Sylvester, which said note grantee assumes and agrees to pay," was inserted with reference to the acknowledged receipt of the $12,-700. It is only natural that, having acknowledged the receipt of the full consideration, the vendor would want some expression in the instrument modifying that previous formal statement, and the language used would be peculiarly appropriate for this purpose. The use of the other clause relied upon, in which the vendor covenants that the property is "free and clear of all liens and incumbrances except as above stated," may be explained in the same way. It is not exact language, but it is just as exact for this purpose as it would be for the establishment of a lien, and when we realize how easy it would have been to state that a lien was reserved or created, I do not feel that a court is justified in straining the language to a purpose which is not apparent.

[3] As between the parties, I have no doubt that the allegations of the petition of Bell are ample, if proven to be true, to sustain his claim to a lien; but as against the trustee in bankruptcy, with all the rights of a creditor who had levied upon the property in good faith without notice except as appears of record, I do not think his claim to a lien can be sustained.

[4] Counsel rightly contend that an attaching creditor is bound to know any and all facts which a reasonably prudent man would ascertain from an examination of the record. This rule must be limited, however, to what a reasonably prudent man would ascertain as to the thing here in controversy, to wit, a lien or mortgage. In other words, the record must be such as against an attaching creditor or a purchaser as to indicate to a reasonably prudent person facts which he can ascertain showing a lien. Unless the record indicates a lien or mortgage, he does not have to make investigation, nor is he bound by what it might disclose. It might be said that every instrument indicates a line of examination which, if diligently pursued, would lead to full information of facts which are not indicated by the record at all. Every bill of sale indicates the seller and the purchaser and the consideration, and it can be said that if an attaching creditor or purchaser would go to the seller or buyer, or the person who prepared the instrument, he would probably find out what the consideration was, and whether it was paid, and whether a lien was reserved; but the rule contended for does not include any such requirement, nor any such duty. It is only where the facts appearing of record point to other facts indicating a lien, which facts, if followed up and thoroughly investigated, would disclose a lien, that the purchaser or attaching creditor is bound by what would have been thus disclosed.

The rights of an attaching creditor, and of the trustee in this case, are exactly the same as would be the rights of an innocent purchaser; and if some man in good faith, with full knowledge of the bill of sale to Cooper, had bought the stock from him and paid him for it,

I do not see how a court could hold that he took the stock subject to a lien or mortgage of $3,500. So that I hold that the bill of sale executed by Bell to Cooper does not in itself create or reserve a lien superior to the rights of the trustee in bankruptcy.

[5] Second. Has Bell a lien, under the averments of his petition, superior to the chattel mortgage executed to the People's National Bank upon the same day the bill of sale was executed?

The People's National Bank is not an attaching creditor, and has none of the rights or priorities of a trustee in bankruptcy. The petition of Bell for preference charges in substance that:

The "People's National Bank had actual notice of the creation of said lien (oral and by bill of sale) by and between the said P. H. Bell and said William D. Cooper, and its retention by the said Bell, and that the People's National Bank at said time agreed to and with the said P. H. Bell and William D. Cooper, and both of them, and admitted that the mortgage hereinafter set forth, executed by the said William D. Cooper to the said People's National Bank upon said stock of goods aforesaid, was and should be junior to the lien for $3,500 retained by the said P. H. Bell."

It will hardly be contended that if in truth (and the aforesaid allegations must be assumed to be true upon this hearing) there was an oral agreement by which Bell reserved a lien upon said property, and the bank had full knowledge thereof, and made a specific agreement that its mortgage should be inferior to said agreement so created, that it is in any position now to claim priority over said lien. The lien would be good between Cooper and Bell, and if the bank was a party to that agreement it would be binding upon it, and the lien would be superior to its mortgage.

The extent of the assets of the estate do not appear. The court is not advised of the condition of the estate, so as to enable it to indicate the rights of the respective lien holders, if upon the hearing it is found that there was an oral contract, as alleged by Bell in his claim for preference against the People's National Bank, so that upon this point all that is decided is that upon the averments of the petition filed by Bell his lien is superior to the rights of the People's National Bank, and the finding of the referee upon this point is reversed.

The finding of the referee that as against the trustee in bankruptcy the alleged lien of Bell is not effective is sustained. The case is remanded to the referee for further proceedings consistent with this opinion.