In re MARTIN et al.

MARTIN v. GLOBE BANK & TRUST CO. OF PADUCAH, KY., et al.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1912.)

Nos. 2,091, 2,160.

1. BANKRUPTCY (§ 461*)—APPELLATE PROCEEDINGS—NATURE OF ORDER.

An order of a bankruptcy court, sustaining the claims of three creditors to the entire proceeds of certain land, which had been fraudulently conveyed by the bankrupt and was recovered through attachment suits in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stituted by such creditors in a state court within four months of the bankruptcy, and which proceeds were held by direction of the state court subject to the orders of the bankruptcy court, was not a judgment allowing the claims of the creditors, within Bankr. Act July 1, 1898, c. 541, § 25a (3), 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432), from which an appeal must be taken within 10 days, but an order made in a controversy arising in a bankruptcy proceeding, appealable under section 24a.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 920–923; Dec. Dig. § 461.*]

2. BANKRUPTCY (§ 440*)—APPELLATE PROCEEDINGS—MODE OF REVIEW.

The remedy by appeal and that by petition for revision, given by Bankr. Act July 1, 1898, c. 541, §§ 24a, 24b, 30 Stat. 553 (U. S. Comp. St. 1901, pp. 3431, 3432), are mutually exclusive.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 440.*]

3. BANKRUPTCY (§ 468*)—APPELLATE PROCEEDINGS—PROCEDURE IN APPELLATE COURT.

On an appeal from an order made in a controversy arising in a bankruptcy proceeding, taken under Bankr. Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3431), the court is not required to state its findings of fact and conclusions of law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 930; Dec. Dig. § 468.*

Appeal and review in bankruptcy cases, see note to 43 C. C. A. 9.]

Petition to Revise and Appeal from an Order of the District Court of the United States for the Western District of Kentucky.

In the matter of T. J. Atkins, bankrupt. As to an order in favor of the Globe Bank & Trust Company of Paducah, Ky., and others, Arthur Y. Martin, trustee, files petition to revise, and also appeals therefrom. On motions to dismiss petition and appeal, for a rehearing (of 193 Fed. 841, 113 C. C. A. 627), and for entry of final decree. Motions to dismiss appeal and for rehearing denied; and motions to dismiss petition to revise and for entry of decree granted.

W. F. Bradshaw, of Paducah, Ky. (Bradshaw & Bradshaw, of Paducah, Ky., on the brief), for appellant.

D. H. Hughes, of Paducah, Ky. (T. L. Crice and Wheeler & Hughes, all of Paducah, Ky., on the brief), for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. February 13, 1912, the decree below was reversed and the cause remanded for further proceedings consistent with the opinion then handed down. 193 Fed. 841, 851, 113 C. C. A. 627. So many things have happened in the case since then that we deem it advisable briefly to allude to them. March 4th, on petition of the Globe Bank and the First National Bank, an appeal was allowed at chambers to the Supreme Court, and bond approved and filed. March 11th these banks filed a motion for allowance of appeal in open court; and on the next day they filed a motion to vacate the decree of reversal and enter final decree, also a request for separate findings of fact and conclusions of law. March 13th they

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

filed a petition for rehearing. An order was then made fixing a time for hearing the motions to vacate and modify the decree and to allow appeal in open court, also directing that the mandate be withheld until such motions were disposed of; and the Old State Bank, on the same day, filed a petition for appeal, the allowance of which was postponed. Prior to July 19th separate findings of fact and conclusions of law were prepared, and on that date the cases were set for hearing at the opening of the October session on questions which then arose as to the proper remedy for reaching the Supreme Court. September 18th motion to extend record on appeal to petition to revise was filed by the trustee; and on the day following motions were filed by all the appellee banks to dismiss both the petition to revise and the appeal. October 7th, the day prior to the expiration of the term, for the purpose of preserving the pending questions of remedy, the appeals theretofore allowed were set aside.

The difficulties that have arisen since the decision in February grow out of the proceedings taken to bring the case as made below into this court and the failure to object to the remedies chosen. The trustee in bankruptcy and certain creditors sought to bring the case here by petition to revise in matter of law (but without transcript of record, which has since been supplied through stipulation), and the trustee alone subsequently resorted to appeal. The petition to revise was filed in this court July 27, 1910, and the transcript on appeal February 23, 1911, and two cases nominally were docketed here. On motion, an order was made postponing the hearing on the petition to revise until the hearing of the appeal; and the cases were, in fact, heard together, in connection with the transcript in the appeal proceeding, as one cause, without objection and without suggestion as to which was the proper remedy. Following the settled course in such circumstances, the court did not consider "any question of remedy or jurisdiction." 193 Fed. 845, 113 C. C. A. 627.

[1] 1. *Jurisdiction.* In the motion to dismiss the petition for revision, the court is asked to determine that question before acting upon any of the other motions. The briefs of counsel are suggestive of another order of disposing of the questions, which we think preferable. Despite the acquiescence of appellees in the remedies adopted and their delay in raising any question of jurisdiction, we feel bound to entertain and determine their motions to dismiss. M. C. & L. M. Ry. Co. v. Swan, 111 U. S. 379, 382, 4 Sup. Ct. 510, 28 L. Ed. 462; Fore River Shipbuilding Co. v. Hagg, 219 U. S. 175, 177, 31 Sup. Ct. 185, 55 L. Ed. 163; Chi., B. & Q. Ry. Co. v. Willard, 220 U. S. 413, 419, 31 Sup. Ct. 460, 55 L. Ed. 521. It is urged that the action of the court below was, in effect, a judgment allowing a debt or claim of more than $500, and consequently that an appeal should have been taken within 10 days after the rendition of such judgment. The final order of the court below was entered July 16, 1910, and the appeal was prayed for and allowed December 3d, upon the execution of a bond, with surety "to be approved" by the court, which approval was given January 10, 1911. It follows that, if the contention that the action of the court below was a judgment of allowance

201 F.—3

within the meaning of section 25a (3) of the Bankruptcy Act be sound, the motion to dismiss the appeal must be granted, because the limitation to 10 days is both distinct and imperative. Conboy v. First Nat. Bk. of Jersey City, 203 U. S. 141, 145, 27 Sup. Ct. 50, 51 L. Ed. 128; Brady v. Bernard & Kittinger, 170 Fed. 576, 578, 95 C. C. A. 656 (C. C. A. 6th Cir.); In re McCall, 145 Fed. 898, 904, 76 C. C. A. 430 (C. C. A. 6th Cir.); Carriere & Son v. United States (C. C.) 163 Fed. 1009, 1010; Old Nick Williams Co. v. United States, 215 U. S. 541, 544, 30 Sup. Ct. 221, 54 L. Ed. 318.

However, we do not think the final order was the allowance of debts or claims. The claims in question are those of the three appellee banks before named. Proofs of the claims of the Globe Bank and the First National Bank were made January 9, 1909, and of the Old State Bank March 17, 1909. All of these claims were for moneys loaned, and it is distinctly stated in the claim of the First National Bank and that of the Old State Bank that no security for the debt had in any manner been received. The least of the six promissory notes proved by the Globe Bank, to wit, a demand note of $500, is stated to have been secured by three collateral notes (not involved here) executed by third persons. It is stated in the proof of the Globe Bank that an action (one of the attachment suits mentioned below) was pending in the McCracken circuit court on its notes, "under which a lien is acquired and held on the real estate therein described, attacking a deed as fraudulent"; but it is further stated that the bank had not "received any manner of security for said debt whatever, except three collateral notes," before mentioned. The record filed here being silent as to formal allowance of these claims, a stipulation was filed in the cause October 16, 1912, in which it was agreed that the stipulation should be considered as part of the record in the two cases, and, in substance, that no order appears or was made in the original record,

"allowing or disallowing any of the claims filed by the respondents and appellees, either in respect of their original proofs of claim, or of any of the amended proofs or petitions of said banks, except the order of the referee of date May 23, 1910."

The essential feature of such order of the referee, as well as that of the final order or decree of the court, is that only those creditors, namely, the three appellee banks, whose claims accrued prior to the date of the execution of the voluntary deed of the bankrupt, were entitled to share in the proceeds derived from the sale of the land covered by such deed; the order of the referee stating:

"* * * It is adjudged that the creditors of the bankrupt whose debts were created prior to the execution of the deed by the bankrupt, T. J. Atkins, to Ed. L. Atkins and others, and which have been proved and allowed herein, are the only class of creditors entitled to share or participate in the distribution of the funds realized from the sale of the real estate sold under the judgment of the McCracken circuit court. * * *"

The amount realized from such sale was stated and was insufficient to pay the debts of these banks; and it was held that they were entitled to the entire fund, subject to costs and taxes, and the trustee

was ordered to pay same to such banks pro rata upon their respective debts. The theory upon which this conclusion was affirmed in the court below is stated in our original opinion, before cited. It is enough to say now that neither the order of the referee, nor the final decree of the court below, purports to be an allowance of the debt or claim, as such, of any of these three banks. Indeed, the debts as originally proved do not appear ever to have been questioned; and the sums so ordered to be paid on such claims were each materially less than the respective debts proved. The true analysis of the order is that it was an order of distribution. It was an order to distribute a fund derived from the recovery and sale of real estate, the conveyance of which had been made by the bankrupt in fraud of the rights of certain of his creditors, as pointed out in our original decision. This fund was so acquired in pursuance of an order of the bankruptcy court; and the validity of the order distributing the fund cannot, we think, be rightly tested by any question of allowance of claim within the meaning of section 25a, but rather by the question whether the pertinent provisions of the Bankruptcy Act, or those of sections 1906, 1907, and 1907a of the Kentucky Statutes (Carroll's Ky. Stat. 1909, pp. 854 to 857), are controlling.

We are not unmindful of the contention that, since in May, 1910, these three banks filed amended and supplemental petitions and proofs of their claims, in which they asserted liens upon the property covered by the judgments of the McCracken circuit court, the effect of the order of the court below was to allow such amended and supplemental claims. The Globe Bank had before filed pleadings in the bankruptcy proceeding, and had been instrumental in securing the order of the court below, authorizing the trustee to institute proceedings in the McCracken circuit court. In the so-called amended and supplemental proofs before alluded to, the judgments obtained in the McCracken circuit court are set up and relied on to sustain the security asserted respecting the claims of the banks, and in each of them the court is asked to apply the fund so obtained toward the payment of their respective claims; but these instruments are not in form or substance proofs of claims.

Furthermore, it is not pretended that any of these banks acquired a lien upon this land at the time they made their loans to the bankrupt, or that they ever obtained a lien upon the land until they began their suits in attachment. These suits were confessedly begun within four months of the commencement of the bankruptcy proceeding against the bankrupt; and it is plain that under the sections of the Kentucky Statutes, before cited, the banks, when commencing such suits, had nothing but rights of action respecting the land alleged to have been fraudulently conveyed. The most, then, that can be said of the asserted liens, is that they were acquired within the four months bankruptcy period. It is hard to perceive how the assertion of such a lien—a lien claimed only to have been created in a case in which the trustee in bankruptcy was a party—can be employed to sustain the theory that the debt (or claim) of any of these banks against the bankrupt was allowed by the order in question of

the referee, within the meaning of section 25a. It was not sought to have any balances that might remain due *allowed*. As it seems to us, a more rational interpretation of these alleged supplemental proofs is that they disclose an intent to intervene in the bankruptcy proceeding, for the purpose alone of securing a distribution of the fund solely among the three banks.

The question thus arises whether this is not a controversy arising in a bankruptcy proceeding (section 24a), rather than a bankruptcy proceeding itself (section 25a). It is too plain for argument that the suit begun and conducted by the trustee in the McCracken circuit court, under the order of the referee and the authority of the bankruptcy court, involved a controversy arising in a bankruptcy proceeding. The land had been conveyed as a gift by Atkins to his son and grandchildren prior to the commencement of the bankruptcy proceeding against Atkins; and the jurisdiction of the court below to make the February order was dependent upon the fact that the banks commenced their attachment suits within four months of the beginning of the bankruptcy proceeding. The grantees under the deed were in actual possession of the land, and were defendants in the consolidated suit (to set aside the deed), in which the trustee was a plaintiff. If the issues in such a case would not present a controversy arising in bankruptcy proceedings, it is difficult to conceive of what would. The land was converted into money and its equivalent in sale bonds; and on April 2, 1910, the McCracken circuit court ordered the trustee, after discharging the costs of the consolidated action, to collect the balance due on the sale bonds and hold same—

"subject to the future orders of the District Court of the United States for the Western District of Kentucky in the matter of T. J. Atkins, bankrupt, therein pending in bankruptcy, and as such court may finally determine the rights of all parties under the judgment of this court as hereinbefore rendered, and upon such other matters as may be pending, or may be presented, in such proceedings pending in bankruptcy" in such court.

Thus the original subject of the controversy so instituted in the state court was converted into a·fund and brought into the custody of the bankruptcy court. Did this change in form of subject-matter, and the extension by the banks of their effort to subject the land so as also to reach its proceeds, operate to convert the original controversy arising in bankruptcy proceedings into a bankruptcy proceeding? We think not. So far as this question is concerned, the case is analogous to Knapp v. Milwaukee Trust Co., 216 U. S. 545, 553, 30 Sup. Ct. 412, 54 L. Ed. 610. There is no apparent difference in principle between Knapp's intervention in that case to have the lien of the mortgages he represented established as the first lien on the property, and satisfied out of the proceeds of sale, and the course pursued here by the three banks to have their asserted rights to the present proceeds of sale established. The purpose of these banks was to have that end accomplished. It was not to have their undisputed debts allowed, and to hold that allowance was the object would be to ascribe to the banks an intent that was not revealed until the lapse of six months after the decree of reversal was entered here. Analogy in

point of remedy is also found in Hewit v. Berlin Machine Works, 194 U. S. 296, 300, 24 Sup. Ct. 690, 48 L. Ed. 986. Title was there asserted by petition to certain machines in possession of the trustee in bankruptcy, and this was treated as "an intervention raising a distinct and separable issue," and so was regarded as a controversy arising in bankruptcy proceedings under section 24a. True, title to the machinery was there asserted; but we are unable to perceive any distinguishing principle between assertion of title to property in possession of a trustee, and assertion of a right to have property or its proceeds in his possession applied exclusively to debts of particular creditors, like these banks, as against general creditors. Indeed, the insistence of the banks is the practical equivalent, and the ruling below is in effect a recognition, of a claim of title in the banks to the proceeds of sale; and this at last puts to the test the soundness or not of the decision of this court touching the supremacy of the Bankruptcy Act over the state statutes respecting the distribution of such proceeds. See, also, Rode & Horn v. Phipps, 195 Fed. 414, 419 (C. C. A. 6th Cir.); In re Mueller, 135 Fed. 711, 68 C. C. A. 349 (C. C. A. 6th Cir.); In re First Nat. Bank, 135 Fed. 62, 67 C. C. A. 536.

As it seems to us, the instant case presents stronger features of a controversy arising in bankruptcy proceedings than are to be found in the cases just commented on and cited. We say this because no lien is asserted that does not fall within the ban of section 67f of the Bankruptcy Act; and (apart from statutory liens, or transactions based on present consideration, or past consideration without reason to believe the existence of insolvency) no case is cited, and we have not discovered any, which accords to a creditor a priority over his fellow creditors that is not traceable to a title or lien antedating a period of more than four months prior to the commencement of bankruptcy proceedings. This alone, it may be observed, fairly distinguishes the decision in Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, and its class, from the present case.

The appeal taken in this case was within the six months period prescribed by section 11 of the Court of Appeals Act (Act March 3, 1891, c. 517, 26 Stat. 829), and we are constrained to hold that the case is properly before us. The motion to dismiss the appeal must, therefore, be denied.

[2] As regards the motion to dismiss the petition for revision, we must confess that much has been said in support of that remedy. But since this presents the question whether such a remedy is open to the petitioner in a case where appeal is regarded as allowable, we are disposed to adhere to the ruling of this court in Barnes v. Pampel, 192 Fed. 525, 113 C. C. A. 81, in which it was held that the two remedies are mutually exclusive. See, also, Loveland on Bankruptcy (4th Ed.) § 814, and pertinent decisions there cited of the Circuit Courts of Appeals for the Third, Seventh, Eighth, and Ninth Circuits.

We do not discover that the Supreme Court has passed upon this question; but it has recently decided that an appeal under section 25, and a petition to revise under section 24b, are not both available in the same case. Matter of Loving, 224 U. S. 183, 188, 32 Sup. Ct. 446,

56 L. Ed. 725. It cannot escape observation that grave doubts arise in the practice, as also in the courts, as to what one of the appellate remedies should be adopted for reaching courts of appeals; and although counsel for the trustee ask the court to retain the petition to revise until the Supreme Court can pass upon the other questions of remedy, we think we are bound to grant the motion to dismiss that petition, but we do so with the consciousness that any error committed in this respect can be rectified through writ of certiorari.

2. *Motion to Vacate Decree of Reversal and Enter Final Decree.* The purpose of this motion is simply to avoid the necessity of having the cause remanded, only to return here and proceed thence to the Supreme Court. We think the motion should be granted.

3. *Rehearing.* The petition in this behalf will be denied. We might add that the views expressed in the original opinion respecting section 67f (193 Fed. 846–850, 113 C. C. A. 627) derive further support from a consideration of sections 70a and 70e of the Bankruptcy Act, and also Security Warehousing Co. v. Hand, 206 U. S. 425, 426, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789, and Thomas v. Sugarman, 218 U. S. 129, 134, 30 Sup. Ct. 650, 54 L. Ed. 967, 29 L. R. A. (N. S.) 250. The contention that the judgments of the state court are res judicata respecting the rights of the trustee and creditors, and also the insistence that a resulting trust in the land in dispute accrued in favor of those banks prior to the four months period, are dependent upon whether, under the Bankruptcy Act, the judgments of the state courts were, or could be, or were intended by either of the state courts to be, binding upon the trustee or the bankruptcy court concerning the distribution of the sales proceeds. The supremacy of the Bankruptcy Act, and the intent of the state courts, as disclosed by their judgments, are, we think, sufficiently considered in the original opinion to indicate our views touching the claims of res judicata and resulting trusts. Counsel still seem to overlook the fact that their suits in the McCracken circuit court were not brought to enforce pre-existing liens, but to create liens. Metcalf v. Barker, 187 U. S. 165, 174, 23 Sup. Ct. 67, 47 L. Ed. 122.

[3] 4. *Findings of Fact and Conclusions of Law.* We cannot conceive that such findings and conclusions are either necessary or proper in this case. If the case was appealable under section 25a, the trustee's right in that behalf was lost by lapse of time, as before pointed out; and in appeals taken under the Court of Appeals Act findings of fact or conclusions of law are not required. Knapp v. Milwaukee Trust Co., supra, 216 U. S. 553, 30 Sup. Ct. 412, 54 L. Ed. 610.

The remaining questions will be disposed of by entry, which, with orders appropriate to the holdings herein, will be entered.