## In re ATKINS.

### (District Court, W. D. Kentucky. July, 1915.)

1. BANKRUPTCY ⊏⊃482—FEES OF ATTORNEYS.

Where an involuntary petition in bankruptcy was brief, and no contest arose on it, because the bankrupt in advance had in writing consented to the adjudication, and the schedules were brief, and there was no indication that counsel of the petitioning creditors, as such, had anything to do with the preparation thereof, an allowance of $200 to counsel for their services was excessive, and would be reduced to $100, conceded by the complaining creditor not to be excessive.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. ⊏⊃482.]

2. BANKRUPTCY ⊏⊃482—FEES OF COUNSEL—LIABILITY OF FUND OF ESTATE.

The compensation of attorneys of a trustee in bankruptcy, in a contest between antecedent creditors, suing to set aside a conveyance by their debtor, and subsequent creditors, is properly chargeable against the bankrupt estate; the antecedent creditors, who alone could have set aside the conveyance, not making any claim for any allowance for the services of their attorneys.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. ⊏⊃482.]

3. BANKRUPTCY ⊏⊃482—COMPENSATION OF ATTORNEYS—AMOUNT.

Where the assets of a bankrupt amounted to a little over $16,000 and interest accumulating on the sale of bonds taken for the purchase money of property sold under judgments of a state court, and the assets were in the hands of the trustee for distribution, attorneys of the trustee, employed to litigate the question whether antecedent creditors, who had sued to set aside a conveyance by the bankrupt, were entitled to the assets to the exclusion of subsequent creditors, were entitled to a fee not exceeding $2,500.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. ⊏⊃482.]

4. BANKRUPTCY ⊏⊃482—FEES OF COUNSEL—ALLOWANCE BY COURT—CONSENT OF CREDITORS.

The court, in allowing compensation of attorneys of a trustee in bankruptcy, must fix the amount of compensation without reference to the fact that certain of the creditors consented to a specified allowance, which, under the circumstances, was excessive.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. ⊏⊃482.]

---

⊏⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. BANKRUPTCY ⊸482—COSTS—ALLOWANCE.

An order of the referee, allowing to counsel of the trustee in bankruptcy expenses in a contest between antecedent creditors, suing to set aside a conveyance by the bankrupt and subsequent creditors, will not be disturbed, where the sum had not been taxed as costs and paid by the subsequent creditors appealing from an order of the District Court adjudging that the rights of the antecedent creditors were exclusive of any right of the subsequent creditors to share in the assets.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. ⊸482.]

In Bankruptcy. In the matter of Thomas J. Atkins, bankrupt. There was an order of the referee making allowances to attorneys, and the First National Bank petitions for a review. Modified and affirmed.

See, also, Globe Bank & Trust Co. of Paducah, Ky., v. Martin, 236 U. S. 288, 35 Sup. Ct. 377, 59 L. Ed. 583.

W. A. Berry, of Paducah, Ky., for claimants.

Wheeler & Hughes, of Paducah, Ky., for First Nat. Bank and others.

EVANS, District Judge. It would be somewhat difficult to state with accuracy and at the same time with brevity what might be a satisfactory history of the litigation in this case, but for present purposes it will suffice to say that in August, 1908, the Globe Bank & Trust Company, then a creditor of the bankrupt, brought this suit in equity in the McCracken circuit court to set aside as voluntary and fraudulent a deed the bankrupt had a short time previously made to his son and the son's children, whereby he conveyed to them practically all of his property. In that suit the plaintiff sued out an attachment, which was levied upon the property conveyed. Soon afterwards the First National Bank of Paducah, and the Old State National Bank of Evansville, Ind., also brought similar suits and obtained attachments therein, which were also levied upon the same property. The amounts due to the three banking institutions was about $20,000, and their claims were the only debts that were created before the conveyance to the son of the bankrupt. In amount they exceeded the value of the estate conveyed.

The situation being thus, Mary Lee Owen, the Mechanics' & Farmers' Savings Bank, and the American-German National Bank, three creditors of the bankrupt, instituted a proceeding in involuntary bankruptcy, in which they stated the nature of their claims, the aggregate of which was $2,458.80. The earliest creation of either of the debts was April 5, 1908, which was after the conveyance referred to. The only act of bankruptcy alleged was that within four months next preceding the date of filing the petition, to wit, December 19, 1908, the said Atkins committed an act of bankruptcy, in that he did theretofore, on the 17th day of December, 1908, admit in writing his inability to pay his debts and his willingness on that ground to be adjudged a bankrupt. A copy of the written admission is attached to the petition in bankruptcy. There was no contest, and on the 28th day of December,

1908. after the subpœna had been served, pursuant to the consent of Atkins, the adjudication was made.

A. Y. Martin, Esq., was chosen and qualified as trustee. Some time afterwards, the matter having been presented to this court in due form, it authorized the trustee to appear in the state court and seek to become a party to the litigation there. Instead, Martin seems to have filed in the state court a suit of his own, and furthermore sought to dominate the litigation there. This latter effort seems to have resulted in failure; but, conceding the right of this court to administer whatever assets might be obtained, the state court, when it entered its final decree in the cases, all of which had been consolidated, appointed Martin as commissioner of the court to sell the property, which the state court had adjudged should be sold. The sale was made, $16,146.58 was obtained for the property, and practically all of it, largely increased by interest on the sale bonds, was ultimately turned over to the trustee in bankruptcy in this case. The amount thus obtained was obtained through the suits that had been instituted by the antecedent creditors of the bankrupt, the benefit of whose attachments had been duly saved under the Bankruptcy Act for the benefit of creditors.

After this was done through the litigation in the state courts, such as has been described, a sharp contest arose in this court between the three banks referred to, who were the only antecedent creditors, and the creditors whose debts were created subsequent to the making of the deed by Atkins which had been set aside in favor of the antecedent creditors by the decree of the state court. The contest in this court resulted in our acquiescing in the views of the state court as to the respective rights of the antecedent and the subsequent creditors; but upon appeal to the Circuit Court of Appeals (29 Am. Bankr. Rep. 935. 201 Fed. 31, 119 C. C. A. 363) that view was overruled, and all the bankrupt's creditors were permitted to share equally. On February 23. 1915, the Supreme Court of the United States (236 U. S. 288, 35 Sup. Ct. 377, 59 L. Ed. 583, 34 Am. Bankr. Rep. 162) affirmed the judgment of the Circuit Court of Appeals. So that it will be seen that the subsequent creditors succeeded in overturning the claims of antecedent creditors to exclusive rights in the fund arising from the sale of the property, and the result was that all creditors (antecedent and subsequent) share equally.

After this result was finally achieved the trustee filed a petition before the referee for the allowance of certain counsel fees, and Messrs. Bradshaw & Bradshaw, who had been the counsel also for the petitioning creditors who secured the adjudication in bankruptcy, filed their claim for a fee in respect to that service. The referee allowed what he thought were proper fees in both aspects of the case, and the First National Bank, by its petitions, has sought a review of all the orders of the referee in that regard. All will be disposed of in one opinion.

[1] Preliminary to the decision of the questions arising on the petitions for review, we may state that Atkins and all counsel in the case resided at or near Paducah, Ky., but the proceeding in involuntary

bankruptcy was instituted at Louisville, Ky. The bankruptcy peti-tion was a very brief one. No contest arose upon it, because in ad-vance Atkins, in writing, had consented to the adjudication. Nothing could have been simpler than this. The schedules also were very brief, and there is no indication, and probably could be none, that Messrs. Bradshaw & Bradshaw had anything to do with the prepa-ration of the schedules of the bankrupt, and after the adjudication there was nothing further for the counsel of the petitioning creditors, as such, to do. Nevertheless, they claim for that service a fee of $500. Several lawyers at Paducah, who probably never saw the record in the involuntary proceedings at Louisville, testified as to the value of the services of the attorneys for the petitioning creditors, and their views widely differed. Two of them estimated a reasonable fee for that service to be $500, another put it at $250, and another put it at $200. The referee, as we have seen, fixed it at $200. With much experience in such matters, I strongly incline to think that the average fee for services of that character does not exceed $50; but in this case the creditor who seeks a review of the allowance concedes that $100 fee would not be extravagant. For that reason I will fix the allowance at $100, and think it is quite liberal.

[2] The question remaining to be determined is whether or not the fee allowed to Messrs. Bradshaw & Bradshaw and J. D. Mocquot of $3,500 was reasonable. They had claimed $5,000, besides over $500 for expenses. It will be observed that several of the witnesses who testified as to the fees upon this phase of the case were the same as those who testified in respect to the fee for filing the petition in bankruptcy. While their estimates varied widely, none of them fixed it at less than $4,000. We have carefully examined the testimony, and find the estimates quite speculative and unsatisfactory.

It cannot be doubted that the services of counsel for the trustee were laborious, extending intermittently over several years, and in four or five different courts. They were valuable particularly to the subsequent creditors of the bankrupt, whose claims probably amounted to three-fifths of the bankrupt's indebtedness; but it can-not be doubted, on the other hand, that those services were not valu-able to the antecedent creditors, though we give that fact no weight in reaching a conclusion.

The contention of the trustee's counsel is that the whole amount should be paid out of the fund, the antecedent creditors bearing their proportion of it. It is objected by the antecedent creditors in their petitions for a review that this would be inequitable, inasmuch as it was their suits and attachments in the state court and the efforts they and their counsel made there which created the fund and rescued the estate of the bankrupt from those to whom he had voluntarily conveyed it. It is insisted that the subsequent creditors, acting alone, could not have maintained a suit for the setting aside of the conveyance, and that only the antecedent creditors could have accomplished that result by their suits and the attachments they ob-tained. There is force in these contentions; but the antecedent cred-itors have not made claim for any allowance for the services of their

attorneys, and consequently we cannot directly deal with that phase of the case. On the contrary, as the case now stands, we must hold that only the trustee's counsel can be compensated out of the fund. It might possibly be a hardship to compel the antecedent creditors to pay any part of the counsel fees of their adversaries under the circumstances developed here, although the main contentions in the litigation out of which the present claims for fees arise were in this court and the courts superior to it over the question of whether the antecedent creditors were entitled to be paid in full. In that litigation the subsequent creditors were victors. But these considerations apart, and taking a comprehensive view of the situation, I am constrained to conclude from the testimony that the allowance of $3,500 was excessive from any point of view.

[3, 4] Without being advised at the hearing of the pending petitions for review, or in any detail by the record before us, of the real facts respecting the services of the trustee's counsel in the cases in the state courts, nor as to what would have been a reasonable fee for those services in those courts, we understand that in this court no testimony was necessary for the preparation of the case between what we have called the antecedent and the subsequent creditors. In the litigation in this court only questions of law appear to have been involved. And not only so, but the bankrupt's estate, amounting to $16,146.58 and certain interest, which without the aid of counsel accumulated on the sale bonds taken for the purchase money of the property sold under the judgment of the state court, was securely in the hands of the trustee for distribution as the court might order.

Stated generally, the assets being in safe hands, the legal question was whether the antecedent creditors, so called, of the bankrupt should get all of them, or whether all the creditors should participate ratably in those assets. We cannot agree that even the repeated argument of such a question in respect to an estate of that amount calls for a fee of $3,500, even including in the estimate a reasonable fee for what services were rendered by the trustee's counsel in the state courts. There, it is true, services were rendered by the attorneys of the trustee; but probably even more fruitful services were rendered by counsel for the antecedent creditors, for it was the suits prosecuted by the latter which resulted in setting aside the voluntary conveyance made by the bankrupt.

These matters should be taken into account in estimating the extent, at least, of the services of the trustee's attorneys in the state court stages of the litigation. As we have intimated, the testimony is most vague and unsatisfactory, and certainly so variant as to negative any claim that there had been established in Paducah, Ky., any standard of counsel fees. We have not regarded as particularly important the fact that certain of the witnesses were interested in the result; but it appears to be quite obvious that the consent manifested by certain of the subsequent creditors to the allowance of the fee of $3,500 is unimportant, as the consent of any individual should not affect the rights of any other creditor.

In this situation we remember that the Supreme Court in Harrison v. Perea, 168 U. S. at pages 325, 326, 18 Sup. Ct. at page 135, 42 L.

Ed. 478, in speaking upon the question of amount of fees to be allowed, said:

"The amount was within the judicial discretion of the court, and in fixing that amount the trial court could proceed upon its own knowledge of the value of the solicitor's services. Trustees v. Greenough, 105 U. S. 527 [26 L. Ed. 1157]; Fowler v. Equitable Trust Co., 141 U. S. 411–415 [12 Sup. Ct. 7, 35 L. Ed. 793]."

Acting upon this suggestion of the Supreme Court, and being quite well acquainted with the general characteristics of this case and of the services of counsel therein, after careful consideration of the testimony, and with a disposition to allow what is fairly reasonable, and even liberal, for the services of counsel, the court is nevertheless of opinion, in a case involving only $16,147, that, instead of $3,500, the allowance to Messrs. Bradshaw & Bradshaw and J. D. Mocquot should not exceed $2,500, and the amount will be reduced accordingly.

[5] Another order of the referee is complained of, to wit, that one of them which allows Messrs. Bradshaw & Bradshaw and J. D. Mocquot $529.24 for certain expenses. It has been seriously objected to by the antecedent creditors upon the ground that such expenses should not to any extent come out of them. The equity of this contention possibly in some particulars may not be altogether without force. Assuming that such expenses as that of $43 deposited with the clerk, and $70.30 paid to the clerk for preparing the record, and $25 deposited with the clerk of the Supreme Court of the United States, have not been taxed as costs and paid by the appellants in the case of Globe Bank & Trust Co. v. Martin, Trustee, and assuming that, if the appellant in the case referred to had paid those items as part of the costs taxed against it, its attorney would have brought that fact to the attention of the referee, we are not disposed to interfere with the action of the referee upon that phase of the case, although the right to certain other of the expenses charged is not entirely clear.

It results that the order of the referee allowing to Bradshaw & Bradshaw $200 for their services for the petitioning creditors should be modified to the extent of making that allowance only $100, that the order of the referee which allows to Messrs. Bradshaw & Bradshaw and J. D. Mocquot $3,500 as their compensation for services rendered the trustee of the bankrupt should be modified to the extent of making that allowance $2,500 only, and further that the order of the referee allowing to Messrs. Bradshaw & Bradshaw and J. D. Mocquot $529.24 should be and it is affirmed.